## Case No. 3,736.

### DEEMS et al. v. ALBANY & CANAL LINE.

[14 Blatchf. 474.][1]

Circuit Court, S. D. New York. June 11, 1878.

NEGLIGENT TOWAGE — CONTRACT EXEMPTIONS — SERVICE ON UNINCORPORATED ASSOCIATION — WAIVER—ADMIRALTY APPEALS—DECREE.

1. A steam tug was held liable for negligence, in towing a canal-boat in such manner that

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

she collided with another vessel and was sunk, although the written contract of towage contained this clause: "All towing at the risk of the master and owners of the boat or vessel towed."

2. An unincorporated association of persons was sued as "The Albany and Canal Line." It waived process, and appeared by that name, and answered without objecting that it was improperly sued: *Held*, that it could not afterwards raise such objection.

3. The circumstances stated, under which, in this case, the value of the canal-boat was allowed as upon a total loss.

4. Where a libellant, in admiralty, in a cause of collision, has a decree in the district court, for a specified amount, with costs, and, on appeal, this court decrees for the libellant, the proper decree in this court is not a decree for the amount awarded* below, including the costs there, with interest from the date of the decree below, nor is interest to be added to the amount reported by the commissioner below, from the date of his report, but the decree is to be for the amount of the loss at the time of the loss, with interest from the time of the loss, and for the costs in the district court, without interest on such costs.

[Cited in Vanderbilt v. Reynolds, Case No. 16,839. Distinguished in The Blenheim, 18 Fed. 48. Disapproved in The Umbria, 8 C. C. A. 181, 59 Fed. 475.]

This was an appeal from a decree of the district court [for the southern district of New York], in favor of the libellants [Charles Deems and others], in a suit in personam, in admiralty. The respondents, an unincorporated association of persons under the name of "The Albany & Canal Line," were the owners of a line of steam tow boats, of which the steam-boat Ohio was one, and engaged in the business of towing boats for hire, on the Hudson and East rivers, between Albany and New York. On Sunday, June 11th, 1871, the canal-boat C. M. Deems, with her cargo, consisting of iron, was taken in tow by the Ohio, at Albany, to be towed to New York, under a contract of which the following is a copy:

| | |
|---|---|
| Austin's New Line. | Notice. Towing must in all cases be paid in advance. |
| Steam | This company does not insure boats or cargoes. |
| Tow Boats, | |
| Syracuse. Ohio. Austin. | New York. June 11, 1871. |
| McDonald, | Charles M. Deems. |
| Leave | Master and Owners, |
| New York & Albany daily. | To Steam Boat Ohio, Dr. For towing from Albany to New York— |
| J. J. Austin, Agent, | Special contract. All towing at the risk of the master and owners of the boat or vessel towed— $20.00. |
| 108 Pier, Albany. | |
| A. D. Hoyt, Agent, | Received payment for owners, |
| 17 South St., New York. | Ableman. |

When the Ohio left Albany, her tow consisted of twenty-nine canal-boats, arranged in six tiers, and all towed by a hawser astern. The Deems was the outermost boat in the fifth tier, and upon the port side. The tow was a heavy one for the power of the boat, and, by reason of this fact, she was more than two days and two nights in making her trip, whereas it was usually made in about two nights and one day. Twenty-six of the boats were taken to New York. The remaining three were left at ports to which they were destined, on the way. The Ohio

reached Weehawken, on the New Jersey shore, opposite the upper part of New York, between eleven and twelve o'clock on the night of Tuesday, June 13th, and remained there, at a dock, until between three and four o'clock in the morning of the 14th. This was to save the necessity of passing around the Battery, and into the East river, in the night. The start was made in the morning so as to save the ebb-tide going down the Hudson river, and reach the Battery at slack water. The steam-boat A. Corning was attached to the starboard side of the Ohio, as a helper, when she left Weehawken. The Corning had gone up from New York that morning for this purpose. When the Ohio, with her tow, reached a point on the Hudson river about opposite Thirteenth street, New York, her pilot discovered the steam-ship City of Brooklyn, at anchor a little east of the middle of the river, about opposite pier 39, and fully a mile below him. There was plenty of room to pass on either side, and it was broad day light, and clear. The pilot at once shaped his course to pass on the east side, that being the course usually taken under the circumstances, as the set of the tide was in that direction, and this was known to him. After the pilot had proceeded on this course for a little time, the captain of the Ohio, thinking it better to go upon the other side, gave the pilot orders to that effect. This order was given because the captain discovered three barges lying to the eastward of the City of Brooklyn, and above her in the river, but which did not in fact interfere with the passage of the tow upon the course selected by the pilot. Upon receiving the order, the pilot changed his course, so as to pass to the west, and, having gone sufficiently far, as he supposed, to get by in safety, straightened the Ohio on her course down the river. After proceeding some distance further, the captain, discovering that the tide was setting the tow to the eastward, so as to endanger a collision with the City of Brooklyn, gave orders to head further to the west, and himself went into the wheelhouse to assist the pilot in putting the wheel over, directing the pilot of the Corning to stop the engine of that boat, so as not to interfere with the movements of the Ohio. Having, as he supposed, taken the Ohio far enough to the westward, he again straightened her down the river upon her course, but the set of the tide was so strong, and the speed of the Ohio, with her heavy tow, so slow, that the boat on the port side of the tow next in front of the Deems swung against the City of Brooklyn, broke loose from her fastenings, and was thrown around, without further injury, upon the east side of that vessel. The bow of the Deems collided with the stern of the steam-ship and the Deems sank almost immediately. The boat next astern of the Deems was broken loose from her fastenings and somewhat injured, but did not sink until she had been towed by the Corning to the flats upon the New Jersey shore. The Ohio proceeded with the rest of her tow, in safety, to her destination in the East river. A contract was made with a wrecking company for raising the sunken boat and her cargo. In this way, about two-thirds of the cargo was saved, but the hull of the boat was so much injured as not to be worth repairing.

Robert D. Benedict, for libellants.
Cornelius Van Santvoord, for respondents.

WAITE, Circuit Justice. In my opinion this case is governed by that of The Syracuse, 12 Wall. [79 U. S.] 167, in which, under a special contract precisely like the one here presented, it was held, that the towing boat was liable, if, through the negligence of those in charge of her, the tow suffered a loss. It is there said, that, "although the policy of the law has not imposed on the towing boat the obligation resting on a common carrier, it does require, on the part of the persons engaged in her management, the exercise of reasonable care, caution and maritime skill, and, if these are neglected, and disaster occurs, the towing boat must be visited with the consequences. * * * It frequently happens, in cases of collision, that the master of the vessel could not have prevented the accident at the moment it occurred, but this will not excuse him, if, by timely measures of precaution, the danger could have been avoided. Applying these principles to the facts as found, it seems to me that the loss must be charged to the Ohio. Beyond all doubt, the collision occurred by the want of preliminary caution and foresight, on the part of the captain and pilot, first, in changing her course, after they had started to go upon the east side of the City of Brooklyn; and, second, in not going far enough to the westward, after it had been determined to go on that side, before steadying her upon her course down the river. The set of the tide and the power of the boat were known at the time, and there was abundance of room to make a sufficient offing. The facts in this case are, certainly, as strong against the Ohio as they were against the Syracuse. The objection to the name of the respondents comes too late. They waived process, appeared by the name in which they were sued, and have answered without taking the exception.

The only difficulty I have had in the case has been in respect to the exception to the commissioner's report, for allowing the value of the boat as upon a total loss, but, on the whole, I am satisfied that the report is sustained by the evidence. The boat was loaded with iron, and, in raising her, the bow end, to the extent of about one-third her length, was broken off. She was towed in this condition to the Pavonia flats, and the saved portion of her cargo taken out. She lay there until September 1st, 1871, when she was sold at auction for $18, no formal survey having

been made. There can be no doubt her owners supposed she was not worth repairing, and the evidence, I think, is sufficient to justify them in not attempting to do so. Although the sale took place in New York, while the wreck remained upon the flats, at a distance from the place of sale, there is nothing to show that she did not bring all she was supposed to be worth. I am satisfied with the disposition of the case made below, and a decree may be prepared accordingly.

On the settlement of the decree, the libellants asked that the amount decreed to them might be ascertained by adding interest to, the amount awarded by the decree of the district court, including the costs there, from the time of the rendition of such decree, or, in case that could not be done, that the amount reported by the commissioner might be taken. as the basis, and interest added to that from the time his report was filed.

WAITE, Circuit Justice. Such I think is not the proper rule. The decree in this court is not one of affirmance or reversal, but is an original decree in the suit. The decree below was, in effect, vacated by the appeal. There should, therefore, be no rests in the calculation of the amount due. The damages should be ascertained at the time of the loss and interest added from that date, without rests, until the decree here.

No interest can be allowed upon the costs in the district court until the final decree here. Until the case is finally disposed of in this court, it is to be considered as all the time pending; and, interest on costs is not allowed during the pendency of the suit. The damages at the time of the loss, as shown by the commissioner's report, may be taken as the basis of the calculation in this case, and interest added from the date of the loss until the date of the decree.