# Roper *v* Burke.

*Bill in Equity for Dissolution of Private Charitable Association, Account and Distribution of Funds.*

1. *Voluntary charitable association; account, and distribution of funds in equity.*—When the operations of a voluntary charitable association have been entirely discontinued, its objects and purposes being abandoned by common consent, a court of equity will decree a dissolution, and distribute the funds among the several contributors in proportion to the amounts paid in by them respectively; but, where the proof shows, as in this case, that the operations of the association have not been entirely discontinued, though another similar association has been formed in connection with the same church, a distribution of the funds will not be decreed, though a bill might be sustained to prevent an unauthorized use of the funds by the trustees, and to compel them to account for funds wasted or perverted.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 11th July, 1885, by W. H. Roper and others, members of the Stone Street Baptist Church (colored) of Mobile, and also of two charitable associations organized among the members of said church, called the "Relief Treasury of the Stone Street

Baptist Church," and the "New Relief Treasury" of said church; against Benjamin Burke, the pastor of said church, Hal Campbell and others, trustees of said associations, and other members of the church who adhered to them, and the banking-house of Thos. P. Miller & Co.; and prayed an account and distribution of the funds belonging to said associations, on deposit in said banking-house, and for general relief. On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error. The material facts appear in the opinion of the court, in connection with the former report of the case. *Burke v. Roper*, 79 Ala. 138–44.

J. L. & G. L. SMITH, for appellants.

WM. S. ANDERSON, *contra*.

CLOPTON, J.—The former appeal in this case was taken from a decree of the chancellor overruling a demurrer to the bill. As to the "Relief Treasury of the Stone Street Baptist Church," the bill substantially alleged, that it was a distinct organization, not subject to the control or government of the church; that it had abandoned its purposes, and ceased operations for about three years prior to the bringing of the suit; and that the accumulated fund was deposited, by agreement, for the mutual benefit of the contributors, without stipulation as to any particular disposition. On the allegations of the bill, which were taken as true on demurrer, we held that, the objects of the association having failed, the fund reverted to the donors, and that a court of equity had jurisdiction to distribute it among those entitled. The constitution of the association was not exhibited, and consequently was not before the court. As to the "New Relief Treasury of the Stone Street Baptist Church," we held that, under the constitution, a copy of which was attached as an exhibit to the bill, its officers are confined to the "Deacon Board" of the church, subject to the restrictions and laws prescribed by the church—an organization within, incidental to, and controlled by the church; and as its operations had not ceased, nor its objects entirely failed, no member had the right to withdraw the amount contributed by him. *Burke v. Roper*, 79 Ala. 138.

After the remandment of the cause, the bill was amended, so as to eliminate all claim to the distribution of the accu-

[Roper v. Burke.]

mulated fund of the "New Relief Treasury," the contention being thereafter confined to the right of complainants to have the fund of the "Relief Treasury" distributed. Testimony was taken, and the cause was then submitted for final decree on the pleadings and proof. An examined copy of the constitution was produced, and put in evidence. From the constitution it appears, that the "Relief Treasury" was organized substantially on the same plan, and governed by the church in the same manner, as the "New Relief Treasury." In other words, it also is an organization within, incidental to, and controlled by the church. The right of a member to withdraw the amount of the accumulated fund contributed by him, to have distribution thereof, falls within the rule declared on the former appeal in respect to the "New Relief Treasury." Complainants are not entitled to the relief prayed, unless the proof establishes that the purposes of the association have been abandoned, its operations ceased, and its objects entirely failed.

The testimony is in conflict, in material respects. The evidence fails to satisfactorily establish, the burden of proof being on complainants, any agreement, when the new association was formed, that the purposes of the first association should be abandoned, and its operations cease, or that the accumulated fund should be preserved on deposit for the mutual benefit of the members, otherwise than as provided by the constitution. It is true the members have contributed nothing to the fund of the first, since the organization of the second association; but the evidence shows that a portion of the fund on hand has been since used for proper purposes— the assistance of the sick, and the burying of deceased members. Hence, the operations of the association had not entirely ceased, nor its objects entirely failed, when the original bill was filed. It seems that a much larger amount of the money on deposit than thus used has been drawn, and what disposition was made of the excess is not shown. If there has been a perversion of the fund, a court of equity, on a proper bill, may prevent unauthorized uses of the money, enjoin its proper appropriation, and hold the trustees to account for the amount perverted; but such perversion does not authorize a distribution of the fund among the members.

Affirmed.