JACOB T. HACKNEY *et al.* v. J. M. VAWTER *et al.*

RELIGIOUS SOCIETY — *Perversion of Church Property — Injunction.* Where some of the officers and members of an independent church forcibly intrude into the church building and the public worship therein an instrument of music and form of worship contrary to the established principles and laws of the church, and it is done without the consent of a majority of the members or of any controlling authority, but against the protest of a majority of the officers appointed to control the affairs of the congregation, their action is an infringement of the rights of the members, and such a perversion of the church property from the purposes for which it was intended as a court of equity will restrain upon the application of the members.

*Error from Cowley District Court.*

ACTION for injunction, instituted in the district court of Cowley county by Jacob T. Hackney against J. M. Vawter, S. J. Smock, J. J. Carson, J. D. Lee, Hiram Smedley, T. B. Tandy, J. W. Warner, Andrew Journey, and T. V. Ray.   The following is a copy of the plaintiff's amended petition, which was duly verified, and which was filed on July 21, 1886 :

"The plaintiff in this action, for himself and others situated like himself, but too numerous to be made plaintiffs in this action, complains of the defendants herein, and for a cause of action against them, says: That heretofore, to wit, in about the year 1872, there was organized in the city of Winfield,

Cowley county, Kansas, a society of christian people known and called 'The Christian church of Winfield, Kansas;' that a lot was procured by the said Christian society in said city, and a cheap building erected thereon as a home for said society in said city to hold public worship in; that the sole guide and discipline accepted for the worship of God by these people building the said church-house was found and is pointed out in the New Testament scriptures; that during the early years of said organization of the above-named congregation it was weak in numbers and in finances; that sometime about the year 1873, under and in pursuance of the laws of the state of Kansas, a charter was filed by the said congregation, through its agents, a copy of which said charter is hereto attached, marked 'Exhibit A,' and the same is made a part of this amended petition, and the lot and the building hereinbefore referred to was procured, conveyed to and held by the trustees mentioned in said 'Exhibit A,' for the benefit of said congregation; that at the time said organization was perfected, there was no organ or other instrumental music allowed to be used or permitted to be used by said congregation in its worship, and there has never been a time since the organization of said congregation that an organ or other instrument of music was so allowed, permitted, or countenanced, until the time hereinafter complained of; that under the rule of faith prescribed for the conduct of a christian community, organized under the name of the Christian church, the church-house used for divine worship, and the congregation worshiping therein, are distinct and separate; that subsequent to the building of the church-house hereinbefore referred to, and about the year 1878, the plaintiff became under the ordinance of God a member of said congregation; that at the time he became a member of said congregation, an organ or other instrument of music was not permitted or allowed to be used during divine worship by said congregation, because unauthorized by the New Testament scriptures; that in the year 1883–4, the said congregation having greatly increased in numbers, and in wealth as well, the lot and building used as a place for divine worship by the said congregation being inadequate in size to accommodate the then largely increased congregation, the said lot and building were sold for about six hundred dollars, and other lots were secured, and a church-house erected thereon at the cost of about six thousand dollars, which by the advance of the price of property is worth now about ten thousand dollars, as a house of worship for said congregation; that the

same was purchased and paid for by the voluntary contributions of the members of said congregation and others as well; and the same was taken possession of by the said congregation as a house of worship, and from thence hitherto has been used as such; that at the time the old church building and lot were sold and the new lots and buildings were procured, no organ or other instrument of music was employed, permitted or countenanced by said congregation in the worship; that at the time the said congregation took possession of the said church building, an organ or other instrument of music was not used by said congregation during the worship in said building.

"Your petitioner further says: That the Christian church aforesaid has no ritual, creed or form for its faith or practice, save the New Testament scriptures, and the New Testament scriptures alone, the word of God being its only rule of faith and practice; and where the word of God speaks, either in commandments or precepts, the said church speaks, and where the word of God is silent on such matters, this church is also silent; that in all matters spiritual the church has ever required a 'thus saith the Lord' for everything to be said or done in its worship; that this congregation from its organization until the introduction of the organ at the time and in the manner herein complained of, has ever required either precept or example from the New Testament scriptures in order to justify the introduction of any custom or practice whatever, as any part of the formula or proceedings in divine worship; that the said Christian church or congregation is religiously separate and independent, subject to no other church society, convention or churches whatever; that New Testament commands, example and precept, in the plain statements of that record, settled all things connected with the religion and worship by said congregation; that the said congregation has ever opposed any and all innovations of man and matters of expediency in its worship of the only true and living God, believing that all such innovations and matters of expediency are not only unauthorized by the word of God, but are positively prohibited and therefore sinful and calculated to create dissensions and divisions among the disciples of Jesus Christ; that the plaintiff and those for whom this action is brought believe that the introduction of the organ and its use by the defendants in the worship by said congregation is such an innovation and expediency wholly and entirely unauthorized by the word of God, and is purely and solely a matter of expediency, the invention of man, and therefore sinful and

contrary to the express commands of the word of God, and therefore he and they cannot participate therein; that the said congregation has been meeting regularly for years on each Lord's day for worship, during all of which time the organ and all innovations or additions have been excluded from the worship by said congregation upon the grounds and for the reasons that such innovations were both harmful and sinful; that these petitioners and a large number of other persons, members of such congregation, are and have been conscientiously opposed to the introduction of such organ into their worship, which fact was well known to the said defendants and others acting with them, who against their wish and protest forced the said organ into the worship by said congregation; that he and they cannot conscientiously participate in divine worship in said building with an organ or other instrument of music used in the worship by said congregation.

"That about the month of February, 1886, J. M. Vawter was employed by said congregation as its preacher, and after that, and possibly before his employment, a conspiracy was entered into, as plaintiff believes, between the said Vawter and the other defendants, without the knowledge or consent of the plaintiff or the other members of the congregation opposed to the use of the organ as a part of the worship; whereby an organ was to be employed by said preacher and his associates in the regular worship of said congregation in said house of worship; and that afterward, to wit, at the same time and place, the said defendant Vawter commenced his ministrations as preacher for said congregation, and at the very first opening of divine service held by him an organ was swung into position, an organist took her place, and the exercises were opened by instrumental music, and this against the wishes and protest of this plaintiff and other members of said congregation, and against the objections and protests of a majority of the officers of said congregation; that in church government of this and all kindred congregations belonging to the church of Christ, Jesus Christ is the recognized head of the church, and the absolute law-giver of his kingdom, and the congregation are his followers, each congregation being separate and distinct in itself, an entirety under and controlled in religious and spiritual matters and affairs alone by the New Testament scriptures; that each congregation has elders and deacons, the business of the elders being to rule, teach, direct and care for the spiritual affairs of the congregation, under the authority of said New Testament scriptures only; and that of the deacons,

more particularly to look after the temporal affairs of the congregation under the said authority; and this congregation always has had a plurality of such elders and deacons, among which some of the defendants assume to be, and that from the date last aforesaid, thence hitherto, the said Vawter, J. J. Carson and other members of said congregation, have used, kept and maintained as a part of the worship, organ music in said church building, without the consent and over the objections of said plaintiff and more than forty other members of said congregation, and a majority of the officers thereof; that this plaintiff and those who are opposed to the use of said organ in the manner stated, are mostly the early members of said congregation, and some of whom were the charter members thereof, and have ever since its foundation had their spiritual home in said church, laboring in word and doctrine, and by use of their means, to the upbuilding of the cause of Christ, and as such contributed the larger portion of the means necessary to erect said church building, of which amount this plaintiff contributed more than one hundred dollars, while the said defendants and those acting in concert with them contributed very little if anything to the erection of this house of worship, and the most of said defendants were not members of said congregation when said last-named church-house was erected, and did not contribute anything thereto; but after the plaintiff and others had erected this elegant, commodious and expensive building as a home for themselves in their old age, where they could worship Almighty God in accordance with the teachings of the New Testament scriptures, the said defendants and those confederating with them, regardless of the rights of the plaintiff and his associates, have forced into the worship in said church and upon said congregation an instrument of music as aforesaid, without their consent and over their positive objections thereto; that this plaintiff and many other members of said congregation will not and cannot engage in divine worship in said building when said organ is employed in connection therewith, because they believe it is a sin, and wrong in the sight of God to do so; whereas, those who persist in the use of said instrument have no such objections or compunctions of conscience; they do not believe that the New Testament scriptures command the use of the organ, while the plaintiff and many other members thereof believe that the New Testament commands that it be not used; and the plaintiff says for himself and others that while they contributed the money in a very large measure to build this edifice,

to be used by them in the worship of God, the defendants and others acting with them contributed but little, and many of them nothing thereto, and that all of them took membership with such congregation well knowing that said congregation did not use instrumental music in its worship, and well knowing that the plaintiff and many others would never consent thereto; and the plaintiff further says that the said defendants should not be permitted to drive the plaintiff and the other members opposed to said organ, out of their own house by the use of said organ in the worship therein, as they have done and purpose to continue to do unless restrained by this court.

"That by reason of the use of said organ in the worship in said church building as aforesaid, this plaintiff and a large number of other members of said congregation have for conscientious reasons been forced to absent themselves from worship with said congregation on every Lord's day since that time, and have been prevented from meeting with said congregation for worship therein, as they had formerly done; that they have tried to persuade, and used every other means in their power to dissuade the said defendants and their associates from the use of said instrument in the worship of said church, to the end that they might, in the future as in the past, worship God as divinely directed, but without avail; and that he and they are now left without any remedy whatever; that there is no other church-house or place convenient where they can congregate to worship God, and they do not feel at liberty to give up this their house of worship to persons who contributed nothing to the erection of the same; that said organ is a new innovation, forced upon the said congregation by said defendants, and that those members opposed to the use of said organ in the worship have either got to stultify themselves, and smother their convictions of right and wrong, and submit to that which they believe to be an abomination in the sight of the Lord by consenting to and being a party to the use of said organ in said church, or they must go out and remain out of said house of worship and turn it over to people who have perverted, as plaintiff believes, the worship of Almighty God therein, yet who have not contributed a nickel toward the erection of said house; that the said J. D. Lee, S. J. Smock, J. J. Carson, Hiram Smedley and J. W. Warner assume to be the trustees of said church property, and the said J. J. Carson is an elder of said congregation, and the said J. D. Lee, T. B. Tandy, Andrew Journey, T. V. Ray, and J. W. Warner assume to be deacons of said congregation; that the

use of said church-house by said defendants as complained of herein is a usurpation of the property rights of the plaintiff and his associates thereon.    Under these circumstances, and acting solely from the holiest feelings of the human heart, absolutely satisfied of the divine condemnation in the use of the said instrument in the worship of God, with no remedy within him or themselves, this plaintiff, and others for whose benefit this action is brought, ask and demand that these defendants, and all others actuated by like impulses, be forever enjoined from the use or employment by said defendants of an organ or other instrument of music in said house of worship, restraining and prohibiting the use of said organ in divine worship in said congregation, or otherwise in said house; and for such other and further relief as to the court may seem proper, as in duty bound will they ever pray, and that they and each of them, and all others acting with them, be forever enjoined from so using said church house."

On August 10, 1886, the defendants filed the following demurrer:

"Now come the said defendants and demur to the amended petition of the said plaintiff for the reason that said amended petition does not state facts sufficient to constitute a cause of action in favor of said plaintiff against said defendants."

On October 18, 1886, the court sustained the demurrer of the defendants to the amended petition, to which ruling plaintiff excepted; and thereupon, the plaintiff, electing to stand upon his amended petition, the court dismissed the action at his costs.    To this judgment *Hackney* duly excepted, and has brought the case here.

*Samuel C. Parks,* for plaintiffs in error; *Hackney & Asp,* of counsel:

The demurrer admits all of the facts stated in the petition, and in the light of these facts the moral and religious wrong done to the plaintiffs is so clear and so flagrant that no argument is necessary to show it.    The question before the court is whether such conduct is legally wrong, and whether the plaintiffs are entitled to the relief prayed for in their petition.

We have not been able to find any case in the books upon

all fours with this one, but cases involving and settling the principles by which this case must be determined are to be found in the reports of many of the states. The supreme court of this state, in *Venable v. Baptist Church*, 25 Kas. 181, 182, says:

"The rules and regulations of a church are, so far as church matters are concerned, a part of the law governing the members of such church. A person who voluntarily joins a church and tacitly at least agrees to be bound by all the rules and regulations of such church, cannot afterward be allowed to wholly ignore and disregard such rules and regulations. As to all matters pertaining to the church, he is clearly bound by the rules and regulations of the church, unless the same are clearly illegal."

See also *Ferraria v. Vasconcellos*, 31 Ill. 35; *Brunnenmeyer v. Buhre*, 32 id. 183; *Hendrickson v. Decow*, 1 N. J. Eq. 577; *Roshi's Appeal*, 69 Pa. St. 467, 468; *Gilbert v. Arnold*, 30 Md. 29; *Watson v. Jones*, 13 Wall. 679. From the foregoing and other like decisions, we deduce the following principles:

1st. That the property of every religious society is held in trust for that society as it existed when the society originated.

2d. That such property cannot be diverted from the purposes to which it was originally dedicated by any means not authorized by the constitution and laws of the society.

3d. That any attempt to so divert the property illegally, irregularly, or by force or fraud, is a clear violation of the constitutional rights of every member of the society opposed to such diversion.

4th. That any irregular and unauthorized change in the doctrine, form of worship, and manner of prayer and praise of such society, is such a diversion.

5th. That any member of such society who has a pecuniary interest in the same has a right to oppose such diversion, and to invoke and receive the aid of equity, if necessary to prevent it, by injunction.

In view of the facts of this case, we think that the court below erred in sustaining defendants' demurrer to plaintiffs' petition, and that the error is apparent as soon as the law and

the facts are placed in juxtaposition. If the question in this case were whether organ music in the christian church is a divine institution, it would be easy to show that it is not.

Organ music was derived by the Jews from the heathen nations by whom they were surrounded. It was not commanded by their law-giver Moses, but was introduced by King David, with many other instruments of music, and with dancing, and some other practices. For this, Dr. Adam Clark says truly David was "solemnly reprehended" by the prophet Amos.

Under the christian dispensation, in all the directions and examples of Christ and his apostles as to the worship of God, the organ is entirely omitted. The greatest of all the apostles repeatedly informed the churches how to praise the author of the christian religion, and he nowhere recognizes the organ, or any other mechanical instrument, in religious worship. (See I Cor. xiv:15; Eph. v:19; Col. iii:16.)

Alexander Campbell said there was "as much authority for a cow-bell in a church, as for an organ." And Dr. Adam Clark, in commenting upon David's adoption of heathen instruments of music in worship, says that "the use of such instruments of music in the christian church is without the sanction and against the will of God; that they are subversive of the spirit of true devotion, and that they are sinful." And a greater than Dr. Clark, John Wesley, says substantially the same thing.

No effort was made to introduce the organ into the christian church until long after the death of Christ and the apostles. It required a struggle of seven hundred years to establish its use in the Catholic church, and this long contest was only settled by the authority of the pope. A similar struggle has been going on for many years in many of the Protestant churches, and in some of them it has led to a great deal of trouble, bad feeling, and unchristian conduct.

But the question whether organ music in the christian church is authorized by the New Testament is not involved

in this suit; neither is it in issue here whether the established method of praising God can be changed in this church by the introduction of organ music, by a majority of the church, acting in a regular, orderly and formal manner, against the wishes and objections, and without the consent of any one or more persons who are members of the church, and have an interest in its property. It is clear from the authorities quoted, that this cannot be done. But the real question involved in this case is plainer than this. It is whether this change can be made, and the property of plaintiffs diverted to the support of a form of worship which they abhor, not only without their consent, but without any regular action of the church, and by surprise, and force and fraud, and whether such diversion, continuous in its nature, can be arrested by injunction. To this question, in the light of the authorities, there can be but one answer.

The decisions we have quoted are in substance and effect expressions by the courts in various forms, of the right to religious freedom guaranteed by the constitution of Kansas. That constitution ordains that "The right to worship God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend or support any *form* of worship; nor shall any control of or interference with the rights of conscience be permitted, nor any preference be given by law to any religious establishment or *mode* of worship." (Bill of Rights, § 7.)

A man unites with a particular church and invests his money in its buildings because he approves its doctrine, forms of worship, modes of prayer and praise, and other religious methods. If these things can be forcibly changed without his consent, and against his wishes, efforts, and conscience, this constitutional provision is utterly nugatory as to him.

The defendants herein, by the proceedings complained of and admitted, have not only violated the principles of the Christian church in fact, but they have in principle violated the constitution of the state.

*Mansfield, Eaton & Pollock,* for defendants in error:

"Courts of equity, having no ecclesiastical jurisdiction, will neither revise nor question the ordinary acts of church discipline or the administration of church government. . . . The only ground upon which civil courts interfere in ecclesiastical cases being the protection of civil rights, they will not interfere with the exercise of any discretion on the part of church authorities, and will not revise or correct the proceedings of ecclesiastical tribunals." (High Inj., §§ 308, 309.)

See also *Walker v. Wainright,* 16 Barb. 486; *Chase v. Cheney,* 58 Ill. 509; High Inj., §§ 312, 317; *Trustees v. Proctor,* 66 Ill. 11; *German Church v. Maschop,* 2 Stock. 59; *Baptist Church v. Witherell,* 3 Paige, 296.

From the foregoing authorities the cardinal principle is deducible: That a court of equity will interpose in church affairs only for the purpose of enforcing and protecting a trust, and that before it will interpose as to any dispute growing out of religious or sectarian controversies, there must be a plain and palpable abuse of power. In the case of *Hale v. Everett,* 53 N. H. 9, (same case, 16 Am. Rep. 120,) the court said:

"We do not deny the right of individuals to change their religious faith, nor the right of members of religious societies to do the same, nor the right of whole societies as a body to apostatize from their original faith, and adopt a new one, antagonistic to the first. This is but exercising those very rights of conscience which are asserted in Art. V. of the bill of rights, as an inalienable birthright of every inhabitant of the state. Nor is it in the province of the court to decide or to inquire which faith is most consistent, or what doctrines are true or what false; and it seldom becomes necessary for the court to turn its attention to theological studies in order to decide questions of law, except in cases like the present, where they are called upon to see that a trust is administered according to the intention of the original founders of such trust."

In the case of *Petty v. Tooker,* 21 N. Y. 267, it was held that the trustees of a majority of the society could change from Congregationalists to Presbyterians and retain possession

of the church property against those who adhere to the faith of the founders of the church and society. And the same doctrine is held in *Gram v. German Society*, 36 N.Y. 161. (See also *Burrel v. Associate Reformed Church*, 44 Barb. 282; *Robertson v. Bullions*, 11 N. Y. 243.)

Does the plaintiffs' amended petition state such a cause of action as is cognizable by a court of equity? Does it allege such an infraction of a trust as will authorize a civil court to interfere to protect the same? Or does it allege the violation of any property right of plaintiff in or to said church or church property on the part of defendants? Clearly not. Plaintiff and others for whom he sues, are not, according to their own statement, denied equal privileges of worship in said church with other members thereof. They allege no depreciation in value in said church property by reason of the use of said organ in the church services. On the contrary, it is proven that the membership and wealth of said church have increased since the adoption of instrumental music in its services. In fact, the issue in this case is only as to the moral right or wrong of the Christian church of Winfield in introducing instrumental music in its church services. That this is the only issue in this action may be clearly determined by considering the character of the evidence which would be admissible upon the trial of this cause upon its merits.

The responsibility of deciding this question lies not with this court, but must be determined by the church itself under its interpretation of its own church ritual; and such decision is reviewable by no earthly court, but by that higher tribunal from which there is no appeal, and in which no error is committed.

The grievance complained of by the plaintiff is, that he, with others situated like himself, is kept out of this church during worship because of the use of instrumental music as a part of such worship; that the use of this music is, as he claims, contrary to the teachings of the New Testament scriptures, and sinful, and that by reason of his conscientious scruples he cannot participate in divine worship where instrumental music is

used. The consideration of the alleged grievance will involve an inquiry into the conscientious scruples of plaintiff, as well as a determination as to whether the use of instrumental music in church worship, when viewed in the light of the New Testament scriptures, is sinful. The court would necessarily be called into a consideration of the interpretation of religious doctrine, and the consciences of men in regard thereto. This is a field that is outside of the jurisdiction of civil courts. We are at a loss to know how plaintiff expects to enjoy the realms of heaven, where St. John· the Divine says that "the four beasts and four and twenty elders fell down before the Lamb, having every one of them harps, and golden vials full of odours, which are the prayers of saints;" and he further says: "I heard a voice from heaven, as the voice of many waters, and as the voice of a great thunder; and I heard the voice of harpers harping with their harps."

The opinion of the court was delivered by

JOHNSTON, J.: We think that the petition stated a cause of action, and that the demurrer of the defendants should have been overruled. The allegations of the petition are voluminous, and in some respects general and indefinite. However, it is averred substantially that when the building used by the congregation of the Christian church of Winfield, Kansas, was erected, no organ or other instrument of music was used by that society in its worship, and that instrumental music has never been allowed or countenanced by that church in public worship, but has always been excluded on the ground that it is harmful and sinful. Notwithstanding this, the defendants, some of whom assume to be trustees and deacons of the church, against the protest of a majority of the officers and a large number of the congregation, forcibly placed an organ in the church building, where it has since been kept and used in the religious services.

In the present state of the case, we are not required to consider the merits of this unfortunate controversy, whether, under the fundamental laws and usages of the society, instru-

mental music is authorized in public worship.   Civil courts
have no ecclesiastical jurisdiction, and never interfere in mat-
ters of church polity except for the protection of civil rights,
and the preservation of that religious freedom guaranteed by
the constitution, which declares that "the right to worship
God according to the dictates of conscience shall never be in-
fringed."   Questions relating to doctrine, discipline, and forms
of worship, are to be determined by the members of the church,
or by a tribunal established under the laws of the church for
the decision of such questions; and the decisions thus made
are accepted as controlling by the courts in all cases where
civil rights are dependent upon those questions.   Where church
property is given and received upon the express condition that
it shall always be used to promote a particular faith, and an
attempt is made to divert the same to the teaching and pro-
motion of different and inconsistent principles, courts may
inquire into the object of the trust and prevent any perversion
of the same.   No such question, however, arises here, as nothing
is claimed by virtue of any conditions upon which the church
property was conveyed or acquired.   It is alleged that "the
Christian church of Winfield, Kansas," is a separate and in-
dependent congregation, subject to no other church, society,
convention or churches whatever.   It is further stated that
the congregation has elders and deacons, the duty of the elders
being to rule, teach, and care for the spiritual affairs of the
congregation, and that of the deacons has been more particu-
larly to look after the temporal affairs of the congregation.
If under the rules of this church it belonged to the elders to
decide what the doctrinal teaching and form of worship should
be, then their consent was necessary to the change from that
which had theretofore been adopted and taught.   According
to the petition, only one of the elders joined in forcibly and
irregularly placing the organ in the church, and it was done
contrary to the laws and usages of the church, and against the
consent and protest of a majority of its officers.   If the con-
gregation is strictly independent and separate from other
organizations, then it would seem that questions like that in

dispute here would be controlled by a majority of the members, or by any local officers or tribunal created by the church for that purpose. *Watson v. Jones*, 13 Wall. 725, is an interesting and instructive case upon controversies in religious societies, and the power of the civil courts concerning the rights to property held by such organizations. Mr. Justice Miller, in treating of an independent congregation which holds property by purchase or donation, with no other specific trust attached to it in the hands of the church except that it is for the use of the congregation as a religious society, says:

"In such cases where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations. If the principle of government in such cases is that the majority rules, then the numerical majority of members must control the right to the use of the property. If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed, are entitled to the use of the property. The minority, in choosing to separate themselves into a distinct body and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once been members of the church or congregation. This ruling admits of no inquiry into the existing religious opinions of those who comprise the legal or regular organization; for if such was permitted, a very small minority, without any officers of the church among them, might be found to be the only faithful supporters of the religious dogmas of the founders of the church. There being no such trust imposed upon the property when purchased or given, the court will not imply one for the purpose of expelling from its use those who by regular succession and order constitute the church, because they may have changed in some respects their views of the religious truth."

If the will of the majority of the members of the congregation must control, as the averments in the petition would indicate, still the action of the defendants was unauthorized and illegal. No innovation could be introduced or material change made in the established doctrine and mode of worship

except upon action of the members taken in conformity to their rules. No such action was taken, and the record brought here discloses that no vote authorizing a change was had, and that the consent of the majority to the introduction of instrumental music in the religious services of the church was never expressed. Assuming that the allegations in the petition are true, as we must, the defendants, who formed but a small part of the congregation and only a minority of the officers, have forcibly intruded into the church and the worship therein, a form and service not allowed by the established laws and teachings of the church. This has been done without the consent of the plaintiff and those for whom he sues, or of the majority of the members legally expressed, and against the protest of the majority of the officers intrusted with the control of the affairs of the congregation. Their action in thus forcibly placing the organ in the church, and continuing its use in public worship, contrary to the established principles, rules and usages of the church, and without the consent of the controlling authority, is unauthorized and illegal, and is such a perversion of the church property as the court will restrain. ·

Religious society —perversion of church property —injunction.

We refrain from discussing the merits of the case in its present condition, as the questions concerning what are the established doctrines, laws and forms of worship in that church, how changes may be made in conformity to its rules, and with whom is the controlling power for the settlement of controversies when they arise, can be best considered and decided after the answer is filed and the proofs offered.

The only question raised by the demurrer is the sufficiency of the allegations of the petition, and this question having been decided in the affirmative, it follows that there must be a reversal of the judgment sustaining the demurrer.

All the Justices concurring.