[Civ. No. 3167.   Second Appellate District, Division Two.—February
25, 1920.]

GEORGE H. HERALD, Appellant, v. GLENDALE
LODGE No. 1289, BENEVOLENT AND PROTEC-
TIVE ORDER OF ELKS OF THE UNITED
STATES OF AMERICA, Respondent.

[1] ASSOCIATIONS—WHEN MAY BE SUED IN OWN NAME—PARTIES.—
Without express statutory authority an unincorporated association
cannot be sued in its own name, but the action must be against
the individual members, or some of them as representatives of all,
or against the members of its governing board of trustees or com-
mittee, if by its rules it has entrusted its management and con-
trol to such officers.

[2] ID.—WHEN SECTION 388, CODE OF CIVIL PROCEDURE, APPLICABLE—
MEANING OF TERM "BUSINESS."—While section 388 of the Code of
Civil Procedure is limited in its application to an association "in
business," of two or more persons under a common name, the
term "business," in this connection, does not mean an actual com-
mercial business, carried on for profit, but is applicable to all
sorts of enterprises which engage people's attention and energies.

[3] ID.—USE OF WORDS OPEN TO CONSTRUCTION—WHAT SENSE AC-
CEPTED.—Where the sense in which a word is used is open to con-
struction, it should be accepted with the meaning most in harmony
with the context.

[4] ID.—ACTION AGAINST LODGE — APPEARANCE — WAIVER OF OBJEC-
TIONS.—Where a fraternal and charitable organization is sued in
its associate name and it enters an appearance in the name under
which suit was brought, without, by motion, demurrer, or answer,
raising the point of misnomer or misjoinder or legal capacity of
parties, the objection is waived.

[5] INJUNCTION—WHEN EQUITY WILL RESTRAIN VIOLATION OF LAW. While equity will not interfere by injunction to prevent the mere violation of law, an injunction may issue to restrain the commis-sion of acts which are violative of public policy, which create a nuisance or assail the rights of property, although such acts are crimes and punishable as such.

[6] ID.—VIOLATION OF LAW BY LODGE — RIGHT OF MEMBER TO RE-STRAIN.—A member of a lodge may maintain an action against the lodge to enjoin it from serving beer to the members at luncheons and banquets in violation of a municipal ordinance.

[7] MUNICIPAL CORPORATIONS—POLICE POWER—PROHIBITION OF SALE AND DISTRIBUTION OF LIQUOR.—Under section 11 of article XI of the constitution, a municipality is empowered to enact the most stringent prohibition of the sale and distribution of intoxicating liquors.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

The facts are stated in the opinion of the court.

W. E. Evans, *Amicus Curiae* on Behalf of Appellant.

No appearance for either Appellant or Respondent.

SLOANE, J.—This is an appeal from a judgment of dismissal after demurrer sustained to complaint without leave to amend. Plaintiff brought the action as a member of the defendant lodge to enjoin it from serving beer to the members at luncheons and banquets in violation of an ordinance of the city of Glendale prohibiting the serving or distribution of malt or spirituous liquors by any person, club, corporation or association.

No briefs are on file other than that of the city attorney of Glendale, appearing on behalf of the complainant, as *amicus curiae.* It is represented that the issue presented has become of slight practical concern to the club because of the potent stimulus to abstemious practices of the pro-hibition amendment to the federal constitution. However, as there is nothing before us to indicate that the contro-

5. Right to enjoin act which is both nuisance and crime, notes, 13 Ann. Cas. 794; Ann. Cas. 1914A, 440; Ann. Cas. 1916C, 455; Ann. Cas. 1916D, 788.

versy has become a moot question, it seems necessary to decide the points raised upon the record.

The demurrer upon which the complaint was held insufficient alleged: insufficiency of facts to constitute a cause of action; that the acts complained of do not constitute a public offense or violation of the ordinance of the city of Glendale; and that the city of Glendale was without constitutional power to enact the ordinance prohibiting the serving of beer to its members by the lodge.

The first question which presents itself upon the face of the record—although not directly raised by the demurrer or referred to in the brief on file—is whether or not the defendant lodge can be sued in its associate name. It does not appear from the complaint that the defendant has any legal entity. The complaint alleges that "this defendant, Glendale Lodge No. 1289 of the Benevolent and Protective Order of Elks of the United States, is a fraternal and charitable organization, instituted upon the authority and by permission of the Grand Lodge of the Benevolent and Protective Order of Elks of the United States of America, and the only authority by which such Lodge 1289 has heretofore and now continues to exist is by virtue of a charter granted to it by said Grand Lodge, which charter is subject to revocation by said Grand Lodge." There is nothing in this statement to give legal personality to the defendant. It must be considered as an unincorporated association, and as such cannot be sued in its associate name, unless it comes under the provisions of section 388 of the Code of Civil Procedure, which provides that "where two or more persons are associated in any business under a common name, whether it comprises the names of such persons or not, the associates may be sued by such common name." [1] It is clearly established by the decisions that without express statutory authority an unincorporated association cannot be sued in its own name, but that the action must be against the individual members, or some of them as representatives of all, or against the members of its governing board of trustees or committee, if by its rules it has entrusted its management and control to such officers. (*Pearson* v. *Anderburg*, 28 Utah, 495, [80 Pac. 307] ; Pomeroy's Code Remedies, 4th ed., sec. 292;

*Doyle* v. *Burke*, 29 R. I. 123, [16 Ann. Cas. 1245, 69 Atl. 362] ; *Greer Mills & Co.* v. *Stoller*, 77 Fed. 1; *Spaulding* v. *Evenson*, 149 Fed. 913 ; *Kimball* v. *Lower Columbia etc. Assn.*, 67 Or. 249, [135 Pac. 877].)

[2]    Neither can section 388 of the Code of Civil Procedure be appealed to very confidently as permitting this action to be maintained against the defendant lodge in its associate name.    By its terms this section is limited in its application to an association ''in business'' of two or more persons under a common name.    If the word ''business,'' in this connection, means an actual commercial business, carried on for profit, the defendant here, as described in the complaint, cannot qualify.    As alleged in the complaint, its purposes are purely social and benevolent.    It maintains a clubhouse, with lodge-rooms, amusement-rooms, kitchen, banquet hall, and other accessories for the amusement and entertainment of its members.    The expenses of the lodge, including the expense of maintaining the club-rooms, kitchen, and banquet hall, are met by the payment of regular monthly dues by the members.    It owns property; but neither the lodge nor any feature connected therewith is run for profit or gain; and all funds remaining after the expenses of the lodge are paid are devoted to charity or the furtherance of the lodge's interests in pursuit of its regular and legitimate purposes.    It clearly is not a business concern, in any mercantile or commercial sense.    On the other hand, if the word is used with the more general and very common meaning of any occupation, employment, or interest in which persons may engage, it would include this defendant.    The California decisions are by no means in harmony or determinative on this point.

In the case of *Warman Co.* v. *Redondo Beach Chamber of Commerce*, 34 Cal. App. 37, [166 Pac. 856], decided in June, 1917, the first division of the court of appeal for the second district held that the defendant, an unincorporated association organized for the general promotion of the business interests and general prosperity of the community, was not a business organization such as contemplated under section 388 of the Code of Civil Procedure, and that action against it could not be maintained in its common name— citing *Swift* v. *San Francisco Stock & Exhange Board*, 67 Cal. 567, [8 Pac. 94], a case of doubtful relevance, and

*St. Paul Typothetae* v. *St. Paul Book Binders' Union*, 94 Minn. 351, [3 Ann. Cas. 695, 102 N. W. 727], which is clearly in point. In the latter case, construing a statutory provision practically identical with section 388 of the Code of Civil Procedure, in its application to an unincorporated trades union society, the Minnesota supreme court says: ''The statute, it is clear, was not intended to include associations of this character. Its purpose was to authorize the courts to take jurisdiction over unincorporated associations engaged under a common name in some sort of business in which property is bought and sold, debts contracted—concerns owning and holding property and incurring pecuniary liability—and not associations of the character of labor unions having no property, engaged in no business occupation, in a proper sense of the term, and whose only function is the promotion of the interests and welfare of the persons who are members thereof.'' On the other hand, the first appellate district court of this state, in a later decision, of date November 13, 1917—*Camm* v. *Justice's Court*, 35 Cal. App. 293, [170 Pac. 409]—without referring to the case in the second district, and, it must be admitted, without the consideration given to the matter in the last-mentioned case, uses the following language: ''We do not think it was necessary to authorize the maintenance of the action against the members of the club by their common name, to show by the complaint the specific purpose or purposes for which the members of the club had so associated themselves together. Nor is it important whether it was a voluntary association, and not organized and conducted for pecuniary profit to its projectors or members. (*Armstrong* v. *Superior Court*, 173 Cal. 341, 342, [159 Pac. 1176].) By this we mean to say that section 388 has reference to an association of two or more persons who thus band together· for the purpose of transacting as a single body any kind of business, whether for profit to themselves or for charitable or philanthropic purposes.'' The case of *Armstrong* v. *Superior Court*, cited in the foregoing decision, does not throw much light on the subject, because in that case the matter arose on a record, as shown by the pleadings, and the complaint having alleged the defendant to be ''an association composed of two or more persons associated in

business under a common name," it sufficiently appeared that it could be sued under section 388.

We are inclined to hold with the ruling in *Camm* v. *Justice's Court,* 35 Cal. App. 293, [170 Pac. 409]. We see no sufficient reason for restricting section 388 of the Code of Civil Procedure to associations formed for commercial business. As already pointed out, the term "business" has a common and general application to all sorts of enterprises which engage people's attention and energies. When a number of persons are associated under a common name in an undertaking in which the associates incur obligations for which they are legally liable, why should they not be sued in the common name which they have adopted, whether it is a money-making concern or otherwise? Indeed, the question of profit is the only distinction that exists between the two classes of associations suggested. If a number of persons were associated together furnishing to their patrons for pay precisely the same accommodations, entertainment and service that the Elks' lodge furnishes its members, there would be no question but that they were engaged in a "business." Why should a different rule of liability exist because the associates happen to contract their liabilities in an enterprise in which they are catering to themselves? The word "business," in its broad sense, embraces everything about which one can be employed; and in its narrower sense it signifies a calling for the purposes of livelihood or profit. (*Easterbrook* v. *Orphan Society,* 85 Conn. 289, [41 L. R. A. (N. S.) 615, 82 Atl. 561].) [3] Where the sense in which the word is used is open to construction, it should be accepted with the meaning most in harmony with the context. (*Parker Mills* v. *Commissioner,* 23 N. Y. 242.) [4] However, irrespective of which of the conflicting constructions of the code section under consideration should prevail, we are of the opinion that there has been a waiver of the point that in this instance suit was improperly instituted in the associate name of the lodge. The question presented does not involve the sufficiency of the cause of action as pleaded, or jurisdiction of the court, particularly in view of the fact that it is not the circumstance that defendant is an unincorporated association, but the class of unincorporated associations to which it belongs, that is the test of the liability to suit under the

association name. An appearance was entered here by the defendant in the name under which suit was brought, without, by motion, demurrer or answer, raising the point of misnomer or misjoinder or legal capacity of parties. Under section 434 of the Code of Civil Procedure, all objections not so taken, and not going to the sufficiency of the cause of action or the jurisdiction of the court, are waived. (*Deems* v. *Albany & Canal Line,* 14 Blatchf. 474, [7 Fed. Cas. 348] ; *Liederkranz Singing Soc.* v. *Germania Turn-Verein,* 163 Pa. St. 265, [43 Am. St. Rep. 798, 29 Atl. 918] ; *Agricultural Extension Club etc.* v. *Hirsch,* 39 Cal. App. 433, [179 Pac. 430].) The case of *Armstrong* v. *Superior Court,* 173 Cal. 341, [159 Pac. 1176], is at least authority sustaining the power of the court to issue an injunction in an action against associations, under their common name, which shall be operative "against all members of any such association having knowledge of any injunction issued therein, as well as all their officers, agents, representatives and employees."

The next question—as to the ruling of the court on the demurrer to this complaint—goes to the power of a court of equity to enjoin the alleged unlawful serving of malt or spirituous liquors by defendant at the lodge banquets, and whether such action can be taken on the complaint of a member of the society complained of. These precise issues were presented to the supreme court in the cases of *Cuzner* v. *California Club,* 155 Cal. 303, [20 L. R. A. (N. S.) 1095, 100 Pac. 868], and *Varcoe* v. *Alameda Lodge, B. P. O. E.,* 174 Cal. 549, [163 Pac. 909]. Both actions were by individual club members to enjoin sale or distribution of liquors to members in alleged violation of local ordinances. Both cases went off on the decision of the supreme court that the practices complained of did not come within the provisions of the ordinances pleaded. No other point is referred to in the opinion in the Varcoe case; but in *Cuzner* v. *California Club,* the court, inferentially, at least, recognized the right of a club member to prosecute such action. Mr. Justice Angellotti, delivering the opinion of the court, said: "It is assumed by the parties that such an action will lie on behalf of a member of the club," and cited *Klein* v. *Livingston Club,*

177 Pa. St. 224, [55 Am. St. Rep. 717, 34 L. R. A. 94, 35 Atl. 606]. In the case cited—and thus incidentally approved—the right of a club member to prosecute injunction proceedings to restrain illegal sale of liquors was recognized. But that case also went off on the point that the acts of the club complained of were not in violation of law. The court, however, says: "A bill having for its sole purpose an injunction against crime or misdemeanor it is well settled will not lie; but it is just as well settled that equity will interfere if the alleged criminal acts go further and operate to the destruction or diminution of value of property." In the case of *Manderson* v. *Commercial Bank,* 28 Pa. St. 379—which, in principle, is somewhat analogous to the case here—the charter of the bank, granted by an act of the legislature, provided that "the rate of discount at which loans shall be made shall not exceed one-half of one per centum for thirty days." It was held that an injunction should issue at the instance of a stockholder to prohibit the practice of the directors in discounting notes at a rate in excess of that allowed by its charter, on the ground that such a practice jeopardized the rights of the stockholders. The court says: "A violation of the rule in relation to the rate of discount may expose the institution to the penalties for usury, and may also put the continuance of the charter in doubt. A stockholder has a right to the necessary means to prevent a course of practice which may produce such results." **[5]** It is beyond controversy that equity will not interfere by injunction to prevent the mere violation of law; but it is equally well settled that injunction may issue to restrain the commission of acts which are violative of public policy, which create a nuisance or assail the rights of property, although such acts are crimes and punishable as such. (*O'Hara* v. *Stack,* 90 Pa. St. 477; Niblack on Benefit Societies, 115, 120; 14 R. C. L. 368; *Roper* v. *Burke,* 83 Ala. 193, [3 South. 439]; *Goodman* v. *Jedidjah Lodge,* 67 Md. 117 [9 Atl. 13, 13 Atl. 627]; *Christensen* v. *Kellogg etc. Co.,* 110 Ill. App. 61; *People* v. *Tool,* 35 Colo. 225, [117 Am. St. Rep. 198, 6 L. R. A. (N. S.) 822, 86 Pac. 224, 229, 231]; *Hackney* v. *Vawter,* 39 Kan. 615, [18 Pac. 699]; *Cope* v. *District Fair Assn.,* 99 Ill. 489, [39 Am. Rep. 30].) The case last cited was an

action by a stockholder of the fair association to enjoin concessions to gambling devices. Relief in that case was denied on the ground that "the licensing of gambling tables cannot in any sense be regarded as the act of the company . . . unless authorized by the stockholders, in which case it would doubtless be such an abuse of the company's franchise as would warrant the state in restraining them." The court further says: "If the bill in this case showed any pecuniary loss or injury, it would present an entirely different question."

[6] The petitioner in the present case bases his claim to relief on the fact that he is a member of the lodge, and as such directly and financially interested in its affairs; that the lodge refuses to desist from, and threatens to continue the practice of the unlawful serving of beer to its members and guests; and that as a result of such violation of the law the lodge will thereby subject itself to prosecutions, fines, and penalties, and other expenses and losses incident to such prosecutions. The legal presumption is that such infractions of the law will be prosecuted; that if the facts are as here pleaded—which, for the purposes of this appeal, must be presumed—the defendant lodge will be fined, and perhaps put to expense for attorneys' fees and other incidental costs; and that such fines, costs, and expenses will fall upon the membership of the club, or at least be paid from money in which the members have an interest. It is not to be doubted—at least the law will not entertain a doubt—that the officers of the municipality will prosecute, and its courts will convict those who are guilty of criminal offenses within its jurisdiction, and that the penalties provided will be imposed and enforced. Why, then, should not the individual members of the lodge be entitled to enjoin such harmful consequences as would thus result? This procedure is not against the infraction of law in itself, but against the infliction upon the club and its members of the pecuniary loss, as well, perhaps, as social odium affecting the material prosperity of the club, growing out of the unlawful method adopted by the managers in carrying on its business.

The remaining question is as to the constitutionality of the ordinance pleaded and its application to the alleged

practices of the defendant lodge. **[7]** That a munici-
pality in this state, under section 11 of article XI of the
constitution, is empowered, under its police authority, to
enact the most stringent prohibition of the sale and dis-
tribution of intoxicating liquors has been settled by numer-
ous decisions of the supreme court. (*Ex parte Christen-
sen,* 85 Cal. 208, [24 Pac. 747]; *Ex parte Ellsworth,* 165
Cal. 677, [133 Pac. 272]; *Ex parte Anixter,* 166 Cal. 762,
[138 Pac. 353].) And we think it clearly appears that the
Glendale city ordinance covers the alleged offense of the
defendant lodge in serving liquor to its members. The
ordinance in question is about as sweeping and inclusive
as language can make it. It declares that any person, firm,
corporation, club, or association that keeps or maintains a
place where vinous, malt, or mixed liquors or any alcoholic
or intoxicating drinks are sold, furnished, delivered, or
given away, or that sells, furnishes, or delivers any such
drinks, is guilty of a misdemeanor; and that every person
having in his possession any such liquors with intent to
sell or distribute the same, and every person who visits or
is present at any place where such liquors are sold, kept,
delivered, or given away in violation of the ordinance, is
guilty of a misdemeanor. This ordinance is easily dis-
tinguishable from that under consideration in *Cuzner* v.
*California Club,* 155 Cal. 303, [20 L. R. A. (N. S.) 1095,
100 Pac. 868], where it was held that the prohibition was
only directed to persons, associations, etc., "conducting,
managing or carrying on *the business* of a retail liquor
dealer." In *Varcoe* v. *Alameda Lodge, B. P. O. E.,* 174
Cal. 549, [163 Pac. 909], it was also held that the charter
provision in question was applicable only to those engaged
in *the business* of selling or dispensing intoxicating liquors.
Although in that case the language of the charter is similar
to the ordinance before us, in declaring it "unlawful for
any person, firm or corporation to establish, open, keep,
or carry on any saloon, bar, store or any place where liquors
are sold or given away, or for any person to sell, barter, or
give away any intoxicating liquors without a license,"
this rather inclusive language is modified by further pro-
visions indicating a limitation of its application to places
where liquor is dispensed as a business—as, for instance,

the direction that "no license shall be issued entitling the licensee to carry on the business licensed at more than one place." In both cases above cited the laws construed were license regulations, but in both decisions the supreme court expressly holds that it was within the power of the municipalities to absolutely prohibit all traffic in intoxicating drinks as a beverage, if they so enacted in explicit terms. We think that this has been done in the ordinance here pleaded, and that the complaint states facts which show that the defendant lodge was engaged in the habitual serving of malt liquors in violation of law, under circumstances calculated to inflict pecuniary loss on the lodge and its members, and that, under the facts as pleaded, the plaintiff was entitled to maintain his action.

The order and judgment appealed from are reversed.

Finlayson, P. J., and Thomas, J., concurred.