# William R. Klein, Appellant, *v.* Livingston Club.

*Equity—Injunction to restrain commission of crime.*

A bill in equity having for its sole purpose an injunction against crime or misdemeanor does not lie; but equity will interfere if the alleged criminal acts go further and operate to the destruction, or diminution of value, of property.

*Clubs—Member of club—Equity—Corporation—Injunction.*

A member of an incorporated club has a standing in equity for an injunction to restrain the club from carrying out its declared purpose of committing an act, which, if found to be criminal, will imperil the charter of the club.

*Liquor laws—Act of May 13, 1887—Strict construction.*

The act of May 13, 1887, P. L. 108, entitled "An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors or any admixture thereof," being penal in character, must be strictly construed, and cannot be extended beyond its letter.

*Incorporated clubs—Sale of liquor incidental—Act of May 13, 1887.*

If an incorporated club is organized and conducted in good faith with a limited and selected membership really owning its property in common, and formed for social, literary or other purposes to which the furnishing of liquors to its members would be merely incidental, the furnishing of liquors to members is not a sale within the liquor license act of May 13, 1887.

*Clubs—Organized to supply drinks—Buying tickets or chips—Legislative intent—Act of May 13, 1887.*

If the object of an organized club is merely to provide members with a convenient method of obtaining a drink whenever they desire, or if the form of membership is no more than a pretense so that any person without discrimination can procure liquor by signing his name in a book, or buying a ticket or a chip, thus enabling the buyer to conduct an illicit traffic, such an organization falls within the terms of the liquor license act.

In view of the fact that at the time the liquor license act was passed it was known to every one that for a long period of years clubs had openly and notoriously furnished liquor to their members, the implication is that if the legislature had intended to prohibit the practice, it would have done so in express terms in the act of May 13, 1887.

*Incorporated clubs for social enjoyment—Purchase of liquor by stewards for distribution among members who pay for it—Act of May 13, 1887—Equity—Injunction.*

The declared purpose of an incorporated club was the social enjoyment of its members by friendly intercourse. It owned a well appointed club house valued with the grounds at over $20,000. The membership was

limited to one hundred residents of the city in which the club house was situated, or resident not exceeding one mile beyond, and all members were required to be over twenty-one years of age. The governing committee of the club passed this resolution : " That the steward be directed to purchase a stock of spirituous and malt liquors, etc., and furnish the same to the members of this club, and receive pay therefor from them only, and turn over the moneys so received to the treasurer of said club, which money shall be again used to replenish the liquors, etc., so furnished to its members, and in the purchasing of eatables, cigars, etc., and also for the defraying of the expenses connected therewith." One of the members filed a bill in equity to restrain the steward from carrying out the resolution. It was admitted in the bill that the club received no profit on the liquors furnished. *Held,* (1) that the complainant in the bill had a standing in equity ; (2) that the furnishing of liquor by the club to its members was not in violation of the act of May 13, 1887 ; (3) that the bill should be dismissed.

The fact that the result of permitting clubs to furnish liquor to their members would be to deprive licensed hotels of patronage to which they are impliedly entitled by payment of heavy license fees, is a subject for the consideration of the legislature, and not of the courts.

Argued March 9, 1896. Appeal, No. 181, Jan. T., 1896, by plaintiff, from decree of C. P. Lehigh Co., Nov. T., 1895, No. 2, dismissing bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed. WILLIAMS, J., dissents.

Bill in equity to restrain a club from furnishing liquor to its members.

The facts appear by the opinion of the Supreme Court.

The court in an opinion by SCHUYLER, P. J., of the 3d judicial district, specially presiding, dismissed the bill.

*Error assigned* was decree dismissing bill.

*James B. Deshler,* for appellant.—In Commonwealth v. Tierney, 148 Pa. 552, the question raised in this case was passed upon by the lower court, PENNYPACKER, J. (29 W. N. C. 194), by whom it was held that the furnishing of liquor by the steward of an unlicensed club to a member, substantially as proposed by the defendant, was a sale within the meaning of the act of May 13, 1887.

In Commonwealth v. Steffner, 2 Dist. Rep. 152, the quarter

sessions of Erie county, GUNNISON, J., the same view of the act as that held by PENNYPACKER, J., was announced. And it has been so held in State v. Essex Club, (N. J.) 20 Atl. Rep. 769; People v. Sinell, 12 N. Y. 40; State v. Easton Social Literary & Musical Club, 73 Md. 97; People v. Bradley, 11 N. Y. 594; Kentucky Club v. Louisville, 17 S. W. Rep. 743; Nogales Club v. State, 10 So. Rep. 574; State v. Neis, 108 N. C. 787; People v. Soule, 74 Mich. 250; Martin v. State, 59 Ala. 34; Hunter v. State, 60 Ark. 312.

Perhaps the most valuable collection of the authorities and discussion of the question is to be found in an article by Judge ENDLICH, in 14 Criminal Law Magazine, 541.

The real question to be determined is simply whether the act of May 13, 1887, is to be interpreted so strictly as to prevent the unlicensed sale of liquor in social clubs or so liberally as to permit them. When the settled rules of interpretation are applied to this statute they compel the conclusion that sales so made are unlawful. The act of May 13, 1887, has been construed strictly: Com. v. Reyburg, 122 Pa. 299; Com. v. Sellers, 130 Pa. 32; Carlson's License, 127 Pa. 330; Com. v. Zelt, 138 Pa. 615. The language of the act of May 13, 1887, indicates an intention to restrict and prohibit what earlier laws permitted.

*Edward Harvey*, with him *R. E. Wright* and *M. L. Kauffman*, for appellee.—The admitted facts as set forth in the pleadings do not amount to a violation of the license act of this state: Com. v. Carey, 151 Pa. 371; Com. v. Fraim, 16 Pa. 163; Hart's App., 96 Pa. 355; Improvement Co. v. Com., 94 Pa. 455; Altenburg v. Com., 126 Pa. 602; Graff v. Evans, L. R. 8 Q. B. 373; Com. v. Smith, 102 Mass. 144; Com. v. Pomphret, 137 Mass. 564; Com. v. Ewing, 145 Mass. 119; Barden v. Montana Club, 11 Law. Rep. Annotated, 593; Com. v. Geary, 146 Mass. 139; Tennessee Club of Memphis v. Dwyer, 1 Am. & Eng. Corp. C. 458; Piedmont Club v. Com., 12 S. E. Rep. 963; Koenig v. State, 26 S. W. Rep. 835; Bell v. St. Louis Club, 26 L. R. Amer. Rep. 573; 11 Am. & Eng. Ency. of Law, 727; Rickert v. People, 79 Ill. 85; State v. Mercer, 32 Iowa, 405; State v. Bacon Club, 44 Iowa, 86; Martin v. State, 59 Ala. 34 · State v. Easton Club, 73 Md. 97; Seim v. State, 55 Md. 566.

OPINION BY MR. JUSTICE DEAN, October 5, 1896:

The plaintiff is a member in good standing of the Livingston Club of Allentown, Lehigh county; the club was duly incorporated April 7, 1890; its purpose, as declared by its articles of association, is the social enjoyment of its members by friendly intercourse. It is the owner of a lot in the city, on which is erected a valuable brick building, containing parlors, reception room, library room, banquet hall, dining rooms, kitchen, committee rooms, billiard rooms, and private rooms occupied by the club steward and servants. The cost of the buildings and grounds was $23,000. The membership is limited to one hundred residents of the city, or resident not exceeding one mile beyond, and all must be over twenty-one years of age. There are no sleeping rooms in the building for members or guests, but some of the members not having families, make the club their home during club hours. No games of chance are permitted. The affairs of the club are controlled by a president, vice president, secretary, treasurer and twelve governors, known as the governing committee. Immediately before the filing of this bill, this committee adopted this resolution:

"Resolved, That the steward be directed to purchase a stock of spirituous and malt liquors, etc., and furnish the same to the members of this club, and receive pay therefor from them only, and turn over the moneys so received to the treasurer of said club, which money shall be again used to replenish the liquors, etc., so furnished to its members, and in the purchasing of eatables, cigars, etc., and also for the defraying of the expenses connected therewith."

Plaintiff admits in his bill the club receives no profit on liquors so furnished, but he avers the steward is about to carry out the directions of the resolution; that the proposed action will be a violation of the license laws of the commonwealth, thus putting in peril the charter of the club, which may be forfeited, and in consequence, he, as a member having an interest in the club property, will be thereby damaged. He therefore prays for an injunction restraining the steward and the governors from carrying out the resolution.

The purpose of the bill is to enjoin defendants from the commission of an alleged indictable misdemeanor, because the misdemeanor, if committed, will probably damage his property

rights.  A bill having for its sole purpose an injunction against crime or misdemeanor, it is well settled, does not lie; but it is just as well settled, equity will interfere, if the alleged criminal acts go further and operate to the destruction of or diminution of value of property.  This case and that of Manderson v. Bank, 28 Pa. 379, are alike in their essential facts.  In the bank case, the law authorized the directors to discount paper at a rate not exceeding one half of one per cent a month.  Manderson, a stockholder, averred that the president and cashier were in the habit of meeting after banking hours and passing paper for discount at a rate exceeding the lawful rate, thus violating the usury laws and subjecting the bank to the penalty therefor, and putting in peril the bank's charter; therefore, his property interest in the bank was endangered.  It was decided a stockholder had the right to prevent by injunction a practice which might produce such injury to him, and the writ was awarded.  In Sparhawk v. Railway, 54 Pa. 401, the writ was refused by a majority of the court, because the sole purpose of the bill was to prevent an alleged violation of the act of 1794, in which question the complainant had no other interest than that of the public generally.

If either the commission of the act here alleged or its criminality depended on the evidence of witnesses, we might well leave it to the proper criminal court for determination; the hand of a chancellor would not be put forth to restrain the commission of what might not be intended as, or what if actually done might not be, criminal, because of the absence of criminal intent.  But here, the declared purpose to commit the act complained of is admitted; whether it be criminal, if committed, is a pure question of law, for defendant's only plea is that the proposed act is not in violation of law.

Would the act when committed be a sale of liquor?  That is the only question, for it is not alleged it is the purpose of defendant to furnish liquor to persons of intemperate habits, to those visibly intoxicated, or to minors.  The act of May 13, 1887, known as the Brooks Law, is entitled " An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors or any admixture thereof."  This is a license act, and prohibits the keeping of any house, room or place, inn or tavern for sale of liquors, without a license first had and ob-

tained; it further prescribes the mode of procedure in all its details to obtain license to sell, and prohibits the sale or gift either by licensed dealers or unlicensed dealers on certain days and to certain classes. Our Brother WILLIAMS, in Commonwealth v. Carey, 151 Pa. 371, referring to the title of the act and the body of it, has so clearly stated its purpose, that his reasoning and conclusion are almost as demonstrative of the truth as the solution of a problem in geometry. He says: "There is no hint of a purpose to restrain and regulate the use of them by private citizens in their own dwellings. We look next into the body of the act, and there we find a comprehensive license system. We have first a restriction of the sale to persons holding licenses, and punishments prescribed for sales by unlicensed persons. Next, the proceedings to obtain a license. Third, provisions regulating the exercise of judicial discretion in granting or refusing licenses. Fourth, penalties for violations of the law by licensed dealers. Fifth, exceptions from the power to sell conferred by a license, as to certain days and certain classes of persons. The seventeenth section belongs to this class of provisions. To the excepted classes and upon the excepted days no man can lawfully sell, or furnish for use as a beverage, any intoxicating liquors. The unlicensed cannot, for the traffic is wholly forbidden to him. The licensed cannot, for an express exception as to these is made in the law under which the license is granted. If notwithstanding the prohibition any person does sell or furnish contrary to the seventeenth section, his conduct is a misdemeanor, and the house, room or place kept or maintained by him for such unlawful sales or furnishings may be abated as a public nuisance under the provisions of the eighteenth section.

"These provisions are not applicable to the table, or the personal habits of citizens within the precincts of their own homes, and they cannot be extended by any known rule of interpretation so as to include them. The furnishing of liquors on Sunday, or to any of the excepted classes, that is made punishable, is a furnishing in evasion of the law forbidding sales. It would be of little avail to close the bars on election days if candidates might open rooms near the polls and furnish liquors free to voters. It would not help the cause of good morals if those who were forbidden to sell on Sunday could under some specious

pretext profess to supply their customers without charge on that day. But if for reasons of health or habit one chooses to supply his own table with his own liquors for use by himself, his family or his guests on Sunday, there is not now and so far as I am aware there has never been in this state any statute forbidding him to do so."

The Brooks law only reduced to a comprehensive system all the features of all the license laws at its date on our statute books. There is not in it, nor in any of the statutes which it replaces, a prohibition of the use of liquors in clubs, any more than there is a prohibition of its use in a family. No indictment for furnishing liquors to members of a club could be sustained, unless the evidence showed beyond reasonable doubt, such furnishing constituted a sale. The statute being penal, it must be subject to a strict construction. We cannot extend it beyond its letter. If we, in construing the Brooks statute, adopt the settled rule of construction, consider the old law, the mischief and the remedy, then we have these questions: The old law regulating and restraining the sale of liquors was disjointed or fragmentary, because it was made up of separate statutes passed at intervals of years, not seldom presenting conflicting provisions, and often provisions in conflict with special local laws; at the same time there was a settled conviction in the public mind that the license law did not produce the revenue that ought to have been exacted for the privilege of selling liquor. In view of the ineffectiveness of the old law, and the smallness of the revenue produced by it, the Brooks law was enacted; its intention was to stop what in the interests of good order ought to be unlawful sales of liquor, and to exact a larger revenue from those sales made lawful by license. Probably, at the date of this act, club organizations, wherein liquor was furnished, as here, had been in existence in large towns and cities for fifty years. The legislature was not ignorant of the fact; if such use tended to disorder or bad morals, the legislature knew it; if such use was not of immoral tendency, yet was a luxury or privilege that would bear taxation and yield revenue, they knew that fact; yet there are no words in the act which, by any possible construction, can be stretched into a prohibition of the use of liquor in clubs, or that can be deemed as requiring they shall be licensed. There is, in fact, no express legislation

concerning this distinctive, open, notorious, long-existing use of liquor; the plain implication is that the consumption of liquor in clubs, as known to the legislature, was not deemed a sale. The general words of the law, however, make the sale of liquor without license illegal everywhere in the commonwealth; and whether this be a sale is now a judicial and not a legislative question.

The bill admits the club will receive no profit on the liquors bought and consumed by the members, so that as concerns this usual incident of a sale, it is not present.  The club buys the liquors and distributes them to the members; those who drink them pay in proportion to the quantity drank; the money for the purchase of the liquor in quantities from the liquor dealer comes out of the treasury of the club; nothing in the shape of food or drink is distributed equally to the members; there is an equal distribution of light and heat; members have like access to the reading rooms and library, but when it comes to food and drink, each contributes to the common fund in proportion as he consumes.  Some eat of terrapin and game, while others prefer less costly and plainer food; the member who is fond of terrapin contributes to the club the cost of it; it would be inequitable that the member who does not touch it should share in paying for it by an equal contribution.  The same rule is enforced in regard to liquors; some do not touch them, they pay nothing; those who drink them, pay.  The purpose of the whole system is to distribute the advantages, comforts and luxuries of the club among the members, so that there shall not be unequal contributions to the treasury which purchases them. They are all owners of the property when purchased, in equal shares; and if a division were then made, each would be entitled to an equal share of the liquor; but one consumes his share and that of others who do not drink liquor, and he puts back into the common treasury the value of the others' shares; therefore, although by consumption the division is not equal, yet it is made equal by the contribution to the treasury; that has neither lost nor gained, consequently the distribution is equitable.  Does this constitute a sale?  We think not; there is no element of bargain, only a method of distribution of the common property.  We are aware there is and has been much difference of opinion among courts on the question.  In Eng-

land, the transaction has been held no sale : Graff v. Evans, L. R. 8 Q. B. Div. 373. In a recent case in Missouri, State v. St. Louis Club, 26 L. R. A. 573, the opinion contains a review of all the cases on the subject, and it is held to be no sale. In the still more recent case in New York court of appeals, State v. Adelphi Club, New York Law Journal, April 10, 1896, decided 7th of April last, and not yet reported in the books, all the judges concurred in pronouncing it no sale. The act then in force, and under which the indictment was framed and conviction had, prohibited the sale of spirituous liquors to be drank upon the premises. There was no question as to the fact that under substantially the same club rules as here spirituous liquors were distributed to the members and by them drank upon the club premises, those drinking returning to the treasury the cost of the liquor. Black on Intoxicating Liquors, sec. 142, after citing the authorities from many states, comes to this conclusion : "Upon the whole, therefore, notwithstanding some conflicting rulings, the rational conclusion is that the intent must govern. On the one hand, if the object of the organization is merely to provide members with a convenient method of obtaining a drink whenever they desire it, or if the form of membership is no more than a pretense, so that any person without discrimination can procure liquor by signing his name in a book, or buying a ticket or a chip, thus enabling the buyer 'to conduct a illicit traffic, then it falls within the terms of the law. But on the other hand, if the club is organized and conducted in good faith, with a limited and selected membership, really owning its property in common, and formed for social, literary or other purposes, to which the furnishing of liquors to its members would be merely incidental, in the same way to the same extent that the supplying of dinners or daily papers might be, then it cannot be considered as within either the purpose or letter of the law."

As before noticed, there could have been no special intent on part of the legislature to prohibit the act here complained of ; there was a general intent to restrain the use of intoxicating liquor by prohibiting unlicensed sales thereof. If this were an unlicensed sale under the guise of a club distribution, it would clearly be unlawful ; the law would look through all disguises, and so pronounce it. But, as, on the undisputed facts, we are

of the opinion the act apprehended by plaintiff is not a sale, there can be no violation of law which will imperil his property rights.

It has been argued that the effect of our decision, if against plaintiff, will be to deprive the licensed hotels of patronage to which they are impliedly entitled, by payment of heavy license fees under the Brooks' law; that members of clubs will consume such liquors as they desire in their club rooms, instead of at licensed bars. This is not without force, but it should be addressed to the legislature, who seem for fifty years in all the legislation on the liquor question to have carefully refrained from prohibiting the furnishing of liquor to club members by their clubs, as well as neglected to impose on them license fees.

The decree is affirmed.