## Commonwealth v. West Philadelphia Fidelio Mannerchor

*Wilhelm F. Knauer*, Deputy Attorney General, and *William A. Schnader*, Attorney General, for Commonwealth.

*Joseph Sharfsin*, for defendant.

GORDON, JR., J., April 10, 1934.—This petition of the Attorney General is filed under section 410 of the Pennsylvania Liquor Control Act of November 29,

1933, P. L. 15, and asks for the revocation of a liquor license issued by the Liquor Control Board to West Philadelphia Fidelio Mannerchor Club, on the ground that the respondent club has sold liquor to its members on Sunday in violation of the third clause of section 411 of the act. There is no dispute that the club did sell liquor to its members on Sunday, and the only question presented for our determination is whether clubs are forbidden by the act to sell liquor on that day. If they are the license should be revoked, and if they are not the petition should be dismissed.

The act authorizes the issuance by the Liquor Control Board of three classes of licenses, namely, hotel, restaurant, and club licenses, and in section 411 provides as follows:

"Sales of Liquor by Licensees.—Every hotel, restaurant or club licensee may sell liquor for consumption only in that part of the hotel or restaurant habitually used for the serving of meals to guests, patrons or members, and, in the case of hotels and clubs, to guests or members in their private rooms in the hotel or club. In the case of a restaurant located in a hotel which is not operated by the owner of the hotel, and which is licensed to sell liquor under this act, liquor may be sold for consumption in that part of the restaurant habitally used for the serving of meals to patrons, and also to guests in private guest rooms in the hotel.

"A hotel or restaurant licensee shall not maintain any counter or bar at or over which liquors are sold to guests, patrons or members.

"Liquor may be sold by licensees, other than clubs, only after seven o'clock antemeridian of any week day and until two antemeridian of the following week day, and shall not be sold on Sunday or on any day on which a general, municipal, special or primary election is being held."

The question of statutory interpretation presented by the case before us is whether the prohibition against the sale of liquor on Sunday in the latter part of the third clause of this section applies to clubs, as well as to hotels and restaurant licensees. In other words, was it the legislative intent that the restrictive words "licensees other than clubs" should apply to all the provisions of the clause or only to the provision as to sales on weekdays to which it is immediately connected? The Attorney General contends that the legislature intended by the language employed, first, to prohibit the sale of liquor between certain hours on weekdays by hotels and restaurants only; and, second, as to Sundays and election days, to prohibit its sale by all classes of licensees, including clubs. The respondent club contends on the other hand that, logically and grammatically, the words "licensees other than clubs" should be read in connection with each provision of the clause, the legislative intent having been so to limit the application of all its provisions.

In support of the position taken by the Attorney General, it is argued that, as there is no repetition of the exception as to clubs in the latter portion relating to sales on Sundays and election days, it would do violence to the broad and unqualified declaration that liquor "shall not be sold on Sundays", etc., to read into it the limiting language of the portion which deals with sales on weekdays. If we invert the order of the provisions without changing the words used, the clause would read that liquor "shall not be sold on Sunday or election days, and may be sold by licensees other than clubs only between 'certain hours' on weekdays". Standing thus, the intention of the legislature to prohibit sales by all licensees on Sundays and election days would be manifest.

Section 411, it will be noted, is the only one which deals generally with sales by licensees, and, apart from the requirement that they may sell only for

consumption on the premises, its three clauses contain all the regulations of sales by others than the State itself. The first of these clauses prescribes the places where all classes of licensees may sell liquor, by providing that it shall be sold only in those parts of their buildings which are used for the serving of meals; and "in the case of hotels and clubs, to guests or members in their private rooms." The second clause regulates the manner of sales and deals only with hotels and restaurants, by forbidding them to sell liquor over the bar, thereby allowing such sale by clubs; and the third clause defines the times when sales may be made. It is argued that there would appear to be no good reason why, with regard to Sunday selling, an exception should be made as to clubs as opposed to hotels and restaurants; that the motive for prohibiting sales on Sundays and election days, namely, to preserve peace and order on days especially requiring such regulation for the public welfare, is as strong in the case of clubs as in that of hotels and restaurants; and that to make an exception in this particular in respect to clubs would give rise to an invidious distinction which the legslature could not have intended. It is true that in hotels and restaurants the public generally is brought together in connection with the use of liquor, while in the case of clubs there is, theoretically at least, a more careful and limited selection of the patrons of the establishment. Nevertheless, the elements of danger involved in the sale of liquor which justify its regulation, and the need, if there be any, for its prohibition at certain times, are substantially as great in the one instance as in the other. Further, if the prohibitive provision in question does not apply to clubs, they are subjected to no regulation whatever, except as to the place in their buildings in which liquor is permitted to be served; and, even as to that, there may be some doubt because of the singular, and possibly accidental, omission of reference to clubs in an important part of the clause which defines the places in which it may be sold. Hence, if clubs were not intended to be included in the prohibition against sales on Sundays and election days, there would appear to be little reason for requiring them to be licensed, other than for purposes of revenue. The foregoing are the principal reasons advanced for the position taken by the Attorney General.

On behalf of the respondent club, on the other hand, it is contended that the clause in question relates in its entirety to "licensees other than clubs", because clubs are expressly eliminated in the only part of it defining those against whom it shall operate. In the various clauses of the section, the licensees to whom each is intended to apply are carefully designated. In one part of the first clause all classes are included, while in the other only hotels and clubs. Similarly, the second clause deals only with hotels and restaurants. So also, by different but as clear language, the third clause deals with "licensees other than clubs", and by them liquor is permitted to be sold between certain hours on weekdays and not at all on Sundays or election days. This, it is contended, takes clubs out of the prohibition against sales on Sundays.

The State has never attempted, in the history of liquor control in Pennsylvania, to regulate the dispensing of it by clubs to their members and guests. That transaction, although called a sale by the act, is not a sale in contemplation of law; Klein v. Livingston Club, 177 Pa. 224; and it has never been thought to present an economic or social problem requiring legislative control and regulation. In this respect, the club transaction differs radically from selling by hotels and restaurants to the general public, and, before a long-established public policy is to be reversed by judicial interpretation, either in whole or in part, the intention of the legislature to do so should manifestly appear from the language of the statute. Of course, for purposes of revenue and

to protect the monopoly of the State in its sale of liquor to the public, the legislature undoubtedly has undertaken to regulate clubs to the extent, at least, of requiring them to take out a license to dispense or sell liquor to their members. It is contended from this that the only purposes which the legislature had in mind in prescribing licenses for clubs were, first, to secure the revenue incident to the issuance of the license, and, second, to control the use and disposal of liquor in quantities by clubs, so as to prevent its being sold in competition with licensees catering to the public and with the State's sales through State liquor stores. The regulation as to the place of sale, it is pointed out, has been applied to clubs because it subserves this purpose, while selling over the bar has not been forbidden to them because such a regulation is designed to meet a public danger to which semi-private drinking in clubs does not give rise. So also the regulation as to the times at which sales may be made is directed to the public aspects of the liquor problem, rather than to matters of revenue and protection against competition. Hence, it is altogether consistent to except clubs from such a regulation, and an interpretation which destroys the apparent legislative scheme should not be adopted in preference to one which would preserve it. This, it is argued, is especially so since on weekdays clubs are permitted to sell during the hours forbidden to hotels and restaurants, and a similar distinction would naturally be expected with regard to Sundays and election days, as it would produce a harmonious and consistent piece of legislation.

In addition to these contentions, the respondent advances one other, which is very persuasive. It may be conceded that the provision in question is utterly wanting in definiteness and certainty. It lends itself as readily to a construction which would include clubs in the prohibition as to one which would exclude them from it. Should, therefore, the liberal or the strict construction be adopted? If the provision were merely regulatory, there would be no hesitancy to adopt the liberal construction contended for by the Attorney General, and this would be in conformity with section 3 (a) of the act, which directs that its provisions shall be liberally construed for the accomplishment of its purposes. The difficulty in doing this, however, lies in the fact that the provision is highly penal, its violation entailing both criminal penalties and forfeiture of license and, under well-settled rules of statutory interpretation, must be strictly construed. The citizen reading the act for the purpose of determining what he may or may not do is entitled to assume that he is prohibited from doing only what the act clearly and distinctly forbids. If there be any dubiety or ambiguity in the expression of the legislative intent in a penal statute, the rule of strict construction permits him to resolve the doubt most favorably to his freedom of action, without incurring the danger of the penalty. All rules of construction of penal statutes demand that a prohibition, coupled with a penalty, be extended no further than the clear language of the statute authorizes, and, if any doubt exists in a particular instance, it must be resolved in favor of innocence: 59 C. J. 1113. This being so, the respondent argues with considerable force that the reasonable and fair doubt which exists as to the legislative intent to include clubs in the section of the statute before us should be resolved against a construction which would work a penalty both in the loss of a license lawfully secured, with all the rights acquired thereby, and in a criminal conviction for a violation of its provisions.

It is almost impossible by merely reading the act to reach a definite conclusion respecting the correct meaning to be placed upon this section. It is so carelessly and awkwardly drawn that, when read and reread, the mind wavers and is in grave doubt as to the intention of the legislature respecting the

inclusion of clubs in the provision. This being so, we would be inclined, were our decision to be final and irrevocable, to adopt the construction contended for by the respondent. To dismiss the petition, however, would preclude a review of the legal question involved by the appellate court, for no appeal lies from our decision, and on certiorari it would not appear whether our decision turned upon the legal question involved or on a lack of evidence of a sale on Sunday, the testimony and opinion not being a part of the record. The legal question can be raised only if we revoke the license. Therefore, as an authoritative decision by our court of last resort is especially desired, because of the importance of the question to the regular and orderly administration of this law, and to prevent confusion in its interpretation, we deem it proper to adopt the construction contended for by the Attorney General, so that the case can be reviewed and the question promptly and finally settled by the appellate tribunal.

### Order

The petition of the Attorney General for the revocation of the respondent's license is therefore granted, and the same is accordingly revoked.