**Zella Koch, Appellant, v. Robert McClugage, Appellee.**

**Gen. No. 8,787.**

Opinion filed August 24, 1934.

Roy P. Hull and George W. Hunt, for appellant.

Weil & Weil, for appellee.

Mr. Justice Dove delivered the opinion of the court.

Appellant, the plaintiff below, in her amended and supplemental bill, hereinafter referred to as the complaint, alleged that in October, 1922, she was married

to Edward J. Koch and has lived and cohabited with him as his wife from that time and that they are the parents of two minor children, aged 10 and 8 years respectively, and that she and her children are wholly dependent upon Edward J. Koch for their support, shelter, maintenance and sustenance. The complaint then particularly described certain premises located in the City of Peoria and charged that appellee, defendant below, conducted, operated and maintained therein and had for more than 10 years last past, a gambling house called ''The Windsor,'' which was equipped with roulette wheels, slot machines, punch boards, poker chips, playing cards, dice, dice tables, lotteries, lottery tickets and divers and sundry other gambling devices, and that these various gambling devices are now and have been kept and used by appellee solely for gambling purposes. It is then charged that appellee, with the help of his employees and servants, maintains, conducts and operates said gambling devices for the purpose of gambling for money or other things of value, with persons frequenting The Windsor, and suffers and allows gambling for money to be carried on in said establishment by any and all persons who frequent and have frequented the same, and who desire or have desired to gamble for money, either by playing said roulette wheels, slot machines, punch boards, lotteries and other gambling games or by playing poker or shooting craps, upon all of which said devices and games money may be and is paid to appellee or played or hazarded with him in the form of gambling.

The complaint then charged that appellant's husband, Edward J. Koch, shortly after their marriage, began gambling and wagering money in The Windsor, and that during the past years his visits thereto for the purpose of gambling have increased to such an extent that he has been spending approximately three-fourths of his time therein, gambling and wagering his money;

that during said period of time, he lost many thousands of dollars in gambling and paid the same to appellee; that in December, 1932, he borrowed $300 from appellee, evidencing the same by his promissory note, and at that time he, the said Edward J. Koch, endeavored to break his pernicious habit of gambling, but shortly thereafter appellee invited him to again gamble and wager money at The Windsor and destroyed said promissory note. The complaint then charges that appellee then and there well knew that the sight of gambling paraphernalia and the click of dice to the said Edward J. Koch made it impossible for him to resist participating in such gambling, and that Koch could not and did not resist the allure of gambling, and since said time has continued his gambling at The Windsor to such an extent that he is now fast losing all desire to engage in legitimate employment and is acquiring an attitude of contempt for the small gains of honest pursuits; that he is and has been, as a result of said gambling, disregarding the maintenance of the home of himself, his wife and children and the payment of their necessary household, medical and hospital expenses and instead of discharging these moral and legal obligations, the said Koch is and has been spending his earnings at The Windsor, by means whereof appellant has suffered and sustained a special damage distinct from that done to the community at large to the extent of $10,000 and the ties of her home and her domestic life will be completely annihilated and she will suffer great damage and irreparable injury unless the public and common nuisance now maintained by appellee is not immediately abated and its operation restrained by an injunction.

The prayer of the complaint is that the premises therein described, so long as they shall be used and operated as in the complaint set forth, be declared a common nuisance and that appellee be enjoined from using, occupying, operating and maintaining the same

for gambling and wagering purposes and from engaging in the operation of conducting and maintaining any games of chance therein where money or anything of value may be hazarded or wagered. The chancellor sustained a general demurrer to this complaint and appellant electing to abide thereby, her suit was dismissed for want of equity and from that decree she has perfected this appeal.

*Hoyt v. McLaughlin,* 250 Ill. 442, was a suit brought by a property owner to restrain the defendants from running an illegal dramshop. The bill alleged that the complainant owned a four-story building about 200 feet distant from the dramshop, but in the same block; that the lower rooms of complainant's property were leased for merchandise purposes and that on the second, third and fourth floors were 18 flats or living apartments occupied as dwellings; that the operation of the dramshop denied to complainant and his tenants the peace and quiet to which they were entitled and that the inherent nature of defendant's business was such that complainant could not rent his premises advantageously, but he is forced to accept greatly reduced rent and an inferior class of tenants. In reversing the decree of the trial court, which sustained a demurrer to this bill, the Supreme Court held that the allegations of the bill made a case of special injury, which entitled complainant to maintain the suit; that an unlicensed dramshop is a nuisance; that such a nuisance will be enjoined at the suit of a private person where the nuisance caused such person a special and particular injury distinct from that suffered by him in common with the public at large, but that in cases where no private or special injury is caused to an individual an action to abate the nuisance must be instituted by or in the name of the public.

Cahill's Illinois Revised Statutes, 1933, ch. 38, ¶ 303, provides that all places where slot machines and other gambling devices are held and operated shall be taken

and declared to be common and public nuisances and subjects the keeper thereof to a fine and imprisonment. Under the allegations of this complaint, appellee is maintaining a nuisance and the question then arises: Can this nuisance be abated at the suit of appellant, a private person? As said in *Hoyt v. McLaughlin, supra,* the answer to this question depends upon whether appellant has suffered special damage different from that suffered by her in common with the public. It is conceded by appellant that as a general proposition, equity has no jurisdiction to enjoin the commission of crimes and that injury to property is the foundation upon which injunctive jurisdiction rests, but appellant insists that destruction of her means of subsistence is such a property right as courts of equity, in the furtherance of justice, will protect, and cites, in support of her contention, *Wahle v. Reinbach,* 76 Ill. 322; *Barrett v. Mt. Greenwood Cemetery Ass'n,* 159 Ill. 385; *Cope v. District Fair Ass'n,* 99 Ill. 489; *Meidel v. Anthis,* 71 Ill. 241; *Herald v. Glendale Lodge,* 46 Cal. App. 325, 189 Pac. 329; *Glover v. Malloska,* 238 Mich. 216, 213 N. W. 107, and Pomeroy's Equity Jurisprudence, 2nd Ed., Vol. 5, sec. 1892.

We have examined each of these cases and the text of Pomeroy. In *Wahle v. Reinbach, supra,* the Supreme Court sustained a decree rendered in favor of a property owner which restrained an adjoining property owner from constructing a privy within 20 feet of a well of water from which complainant and his family were supplied with water for drinking, cooking and domestic purposes. In *Barrett v. Mt. Greenwood Cemetery Ass'n, supra,* the court said that drainage from a cemetery into a flowing stream, thereby rendering the waters therein unfit for domestic purposes, constituted a nuisance which a court of equity would enjoin at the instance of the owners of the land through which such a stream flows. In *Cope v. District Fair*

*Ass'n, supra,* it was held that a stockholder of an incorporated fair association could not maintain a suit to enjoin the association and its officers from permitting gambling on the grounds of the association. *Meidel v. Anthis, supra,* was an action brought to recover damages from one who had furnished her husband with intoxicating liquor and it was held that the plaintiff must allege and prove that she was injured in her person, in her property or in her means of support before a recovery could be had. The court interpreted the phrase, "Means of support," as used in the statute, to embrace all those resources from which the necessaries and comforts of life are or may be supplied, such as lands, goods, salaries, wages or other sources of income. In *Herald v. Glendale Lodge, supra,* the complainant, as a member of the defendant lodge of Elks, brought an action to enjoin it from serving beer to its members at luncheons and banquets in violation of the city ordinance of the City of Glendale, and the Appellate Court, in reversing the decree of the lower court, which sustained a demurrer to the bill, held that an individual member of the defendant had a right to enjoin the harmful consequences which the bill disclosed would result to the defendant if it was permitted to continue to violate the ordinance. In its opinion the court cited *Klein v. Livingston Club,* 177 Pa. 224, 35 Atl. 606, 34 L. R. A. 94, 55 Am. St. Rep. 717, where it is said: "A bill having for its sole purpose an injunction against crime or misdemeanor, it is well settled, does not lie; but it is just as well settled that equity will interfere if the alleged criminal acts go further and operate to the destruction of or diminution of value of property." The opinion then refers to the case of *Manderson v. Commercial Bank,* 28 Pa. 379, which held that an injunction should issue at the instance of a stockholder to prohibit the practice of the directors in discounting notes at a rate of

interest in excess of that allowed by its charter, on the ground that such a practice jeopardized the rights of the stockholders. The opinion then points out that the plaintiff in the *Herald* case bases his claim to relief on the fact that he is a member of the Elks lodge and as such is directly and financially interested in its affairs and that as a result of its unlawful conduct, the lodge will subject itself to prosecutions and losses incident thereto. The court in its opinion then says: "Why, then, should not the individual members of the lodge be entitled to enjoin such harmful consequences as would thus result? This procedure is not against the infraction of law in itself, but against the infliction upon the club and its members of the pecuniary loss, as well, perhaps, as social odium affecting the material prosperity of the club growing out of the unlawful method adopted by the managers in carrying on its business.''

In *Glover v. Malloska, supra,* the defendant, doing a wholesale business as the Lincoln Petroleum Products Company, sold lottery tickets to his retail customers at one cent each, who in turn gave them away to purchasers at their retail oil stations. These tickets gave the holder a chance upon an automobile which was raffled off at least once each month. In sustaining a bill to enjoin the conducting of such a lottery, brought by a competitor in the oil business, on the ground that the illegal scheme attracted business to the injury of plaintiff's property rights, the court said: "No one should be permitted to employ criminal means in trade rivalry. The law proscribes a lottery and those injured thereby *in their rights of property* are not required to suffer successive inflictions of pecuniary injury until a criminal prosecution is launched. Courts do not depart from the rule that equity may not interfere, except to protect property rights of a pecuniary nature, in enjoining criminal acts exercised by one

dealer to enhance his sales to the calculated pecuniary injury of a law abiding competitor. Defendant Malloska adopted the lottery scheme for profit, admits its employment increased his sales, and plaintiffs established the fact that such increase was directly traceable to their loss of customers. We think plaintiffs entitled to an injunction.''

In Pomeroy's Equity Jurisprudence, *supra,* the author states that where the injury resulting from the nuisance is irreparable as when destruction of the means of subsistence will ensue from the wrongful act, then courts of equity will interfere by injunction in furtherance of justice and the violated rights of property, and in *Wahle v. Reinbach, supra,* the court in its opinion used substantially the same words, but in support of the text in Pomeroy, no cases are cited, nor do any of the cases relied upon by appellant hold that the wife of a confirmed gambler who spends some of his earnings and three-fourths of his time at an illegal place of business and as a result thereof disregards his moral and legal duty to maintain his home and support his wife and children, is entitled to have such illegal business abated. The California case, *supra,* is distinguishable because there the proceeding was brought by a member of the lodge which was engaged in an illegal act, and the relief was granted because a continuance thereof would inflict a pecuniary loss upon the plaintiff member and in the Michigan case, *supra,* it was also held that a continuance of the illegal act of the defendant inflicted a pecuniary loss to the plaintiff's business.

In the instant suit, it cannot be said that the conduct of appellee in maintaining a nuisance affects in the least appellant in her enjoyment of her property or inflicts pecuniary loss on her in the sense that term is used in the cited cases. The most that can be said is that appellee, by affording appellant's husband a

place to gamble, thereby causes him to squander his time and money, which results in his failure to perform his duty to properly support and maintain appellant and their children. The right which appellant has to have her husband support and maintain her and her children is not, in our opinion, such a property right, or property, in the sense that the same may be preserved to her by enjoining the maintenance of a nuisance.

Counsel for appellant have failed to furnish us with a precedent where such a bill has been sustained, and our own research fails to find any. Our sympathies are with appellant, but courts of equity are not authorized to grant injunctions for moral reasons nor restrain an illegal act simply because it is illegal or because the law enforcement officers of a community refuse or neglect to do their duty, but as frequently pointed out by the decisions, it is elementary law that the subject matter of the jurisdiction of a court of chancery is civil property. Equity is conversant only with questions of property, and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation upon which the jurisdiction of a court of chancery rests, and it has no jurisdiction in matters merely criminal or merely immoral, which do not affect any right of property. *Sheridan v. Colvin,* 78 Ill. 237.

Cahill's Illinois Revised Statutes, 1933, ch. 38, ¶¶ 148, 149, impresses all places, which are used for the purposes of lewdness, assignation or prostitution, as public nuisances and authorizes not only the State's attorney, but any citizen, to institute a suit in the name of the People of the State of Illinois and abate such nuisance, restrain its maintenance and enjoin the use of the premises for any purpose for one year. In the absence of any like statutory enactment by the general assembly authorizing any citizen to institute a suit to abate a gambling den and restrain its mainte-

nance and enjoin the use of the premises for that purpose, this court is of the opinion that to grant appellant the relief sought, in view of the repeated holdings of our courts, would be to extend into new fields the jurisdiction of equity as heretofore recognized.

There was no error, in our opinion, in sustaining the demurrer to the amended and supplemental bill, and the decree of the lower court is therefore affirmed.

*Decree affirmed.*