## Commonwealth v. Burnside

*Mont L. Ailey,* district attorney, and *John Praether,* special counsel for Department of Revenue, for Commonwealth.

*R. L. Hildebrand, W. D. Cobau,* and *Morris M. Berger,* for defendant.

BRAHAM, J., July 30, 1937.—Defendant was tried without a jury under the provisions of the Act of June 11, 1935, P. L. 319. The Supreme Court not having made any rules under said act, nothing is required beyond a general verdict. This has been rendered this day in favor of defendant. However, this case was brought by the Department of Revenue of the Commonwealth of Pennsylvania, and an attorney representing it appeared at trial to represent the Commonwealth. It seems, therefore, that a decent respect for the department's endeavor to collect all taxes properly due the Commonwealth requires that we make known the reasons which have moved us to find a verdict in favor of defendant. Hence this statement of our views.

By this indictment defendant was charged with having violated the Amusement Tax Act of June 22, 1935, P. L. 429, 72 PS §3168, et seq., one count of the indictment charging him with failing, neglecting and refusing to take out an amusement permit, as required by section 3 of the act, and the second count charging him with being an amusement producer and, as such, failing to collect and pay over the amusement tax required by section 17 of the act. In our opinion he is not guilty on either of these counts.

Defendant is the owner of certain mechanical musical record-playing machines which he leases to the owners of restaurants, beer gardens, service stations and the like. They are operated by the insertion of a nickel in a slot. The contention of the Commonwealth is that the furnishing of these mechanical phonographs which may be played by the public upon the insertion of a nickel constitutes an amusement; that defendant as the owner and lessor of the machine is a producer; that the amount placed in the slot constitutes an established price; and that therefore defendant should have taken out an amusement permit, and the tax is payable.

The evidence in the case is very brief, consisting chiefly of an agreed stipulation of facts which, because of its brevity, is here quoted in full:

"Mr. Berger: It is stipulated that the following facts apply to the case at issue:

"First: That the phonographs owned and operated by the defendant in Lawrence County are leased or rented by him to the owners of the locations.

"Second: That no profits are received by the defendant from the place where the machine is located other than a proportionate part of the receipts of the phonograph.

"Third: That no price of admission is charged to gain access to the premises on the part of the public wherein said machines are located.

"Fourth: The particular restaurant mentioned by the witness, Elliott, known as the Paramount Inn, is owned and operated by Aiello Brothers.

"Fifth: That all places in which the defendant's machines are located in the County of Lawrence have machines under the same set of facts.

"Mr. Berger: That is all your Honor.

"Mr. Praether: Counsel for the Commonwealth and for the defendant further stipulate that the mechanical contrivances are operated upon the dropping of a nickel in the slot."

In addition to this stipulation there was evidence of

Arthur Y. Elliott, an agent of the Department of Revenue, to the effect that defendant had admitted to him the leasing of his machines for use in the Paramount Inn at Wampum, a restaurant or eating place having a license.

The effective general provisions of the Amusement Tax Act, supra, sec. 4(a), are as follows:

"A State tax is hereby imposed upon the privilege to attend or engage in any amusement at the rate of one cent (1c) for each twenty-five cents (25c), or fraction thereof, of the established price charged the general public, or a limited or selected group thereof, by any producer for such privilege, which shall be paid by the person acquiring such privilege."

Section 3(a) provides: "On and after the effective date of this act, it shall be unlawful for any producer to continue to conduct, or thereafter to begin to conduct any form of amusement at any permanent or temporary place of amusement, or any itinerant form of amusement within this Commonwealth, unless an amusement permit or permits shall have been issued to him as hereinafter prescribed."

Certain general principles of statutory construction apply to the decision of this case. The act in question is a penal statute providing punishment by fine or imprisonment for acts which, previous to the passage of the statute, were no crime. Such an act should be strictly construed in favor of defendant: Klein v. Livingston Club, 177 Pa. 224; Commonwealth v. Bercaw, 30 Pa. Superior Ct. 335, 338; Rhoads v. Quemahoning Coal Co., 238 Pa. 283. The rule requiring this construction of penal statutes applies particularly to a tax law. On this point Justice Maxey of the Supreme Court said recently in Husband's Estate, 316 Pa. 361, 369, with reference to the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521:

"It is well settled that tax laws are to be construed most strictly against the government and most favorably to the taxpayer, and a citizen cannot be subjected to a special burden without clear warrant of law."

At the trial it was admitted that there was grave doubt whether or not the Amusement Tax Act applied to defendant. Under such circumstances, what was said in Barber's Estate, 304 Pa. 235, 240, as repeated with approval in Krause's Estate, 325 Pa. 479, 483, is particularly pertinent:

". . . it is not the function of a judicial tribunal 'to impose taxation, which is a species of confiscating by a strained construction of doubtful legislation'. . . . If there is a doubt or uncertainty as to the imposition of the tax, that doubt or uncertainty should be resolved in favor of the taxable."

Chief among our reasons for finding defendant not guilty of a violation of this statute is our conclusion that he is not a "producer" within the meaning of the act. A "producer" is defined in section 2 of the Amusement Tax Act as follows:

"Any person, as herein defined, conducting any place of amusement, as herein defined, where the general public, or a limited or selected number thereof, may, upon the payment of an established price, attend or engage in any amusement."

Defendant was not, in our opinion, engaged in conducting any place of amusement. He merely leased or rented a device to the persons who were conducting the place of amusement, if such the Paramount Inn was. This is the feature which distinguishes our case from the case of Commonwealth v. Yanko, 28 D. & C. 470.

Aiello Brothers conducted the Paramount Inn and defendant leased them their mechanical victrola. He is essentially no different than the person who may have leased other devices to the restaurant owners, as for example, a coffee urn or a meat-slicing machine, except for the fact that defendant was to be paid a proportion out of the income of the machine. It is a reasonable inference that the public was expected to put the nickel into the slot to operate the machine and to provide the profits; but there is nothing to prevent the restaurant owner himself

from putting in the nickel to operate the machine for the benefit of his customers. A man leasing or renting a cigarette vending machine or chewing gum vending machine to the restaurant owner and deducting a proportion of the income from the machine for his compensation would furnish a more nearly analogous situation to that now before us. Suffice it to say, however, that we believe it very clear that defendant was not a producer.

Although we believe our conclusion with reference to defendant's being a producer is decisive, we are also of the opinion that this was not a "place of amusement" within the meaning of the act. The relevant sections of section 2 of the Amusement Tax Act are as follows:

" 'Amusement.' All manner and forms of entertainment, including, among others, theatrical or operatic performances, concerts, moving picture shows, vaudeville, circus, carnival, and side shows, all forms of entertainment at fair grounds and amusement parks, athletic contests, including wrestling matches, boxing and sparring exhibitions, football and baseball games, skating, golfing, tennis, hockey, bathing, dancing, and all other forms of diversion, sport, recreation, or pastime, shows, exhibitions, contests, displays, and games, and all other methods of obtaining admission charges, donations, contributions, or monetary charges of any character, from the general public, or a limited or selected number thereof, directly or indirectly, in return for other than tangible property, or specific personal or professional services.
. . . .

" 'Place of Amusement.' Any place, indoors or outdoors, where the general public, or a limited or selected number thereof, may, upon payment of an established price, attend or engage in any amusement as herein defined, including, among others, theatres, opera houses, moving picture houses, amusement parks, stadiums, arenas, baseball parks, skating rinks, circus or carnival tents or grounds, fair grounds, social, sporting, athletic, riding, gun, and country clubs, golf courses, bathing and

swimming places, dance halls, tennis courts, rifle or shot-gun ranges, roof gardens, cabarets, night clubs, and other like places."

Neither the paragraph defining amusement nor the paragraph defining place of amusement provides that a restaurant is a place of amusement. Roof gardens, caba-rets, night clubs, and other like places are mentioned as places of amusement, but not restaurants. Yet, so far as the evidence in this case is concerned, we have here noth-ing proven except a restaurant with a mechanical vic-trola. In the case of Commonwealth v. Yanko, supra, the proprietor provided an orchestra and a place for dancing by guests once or twice a week without cover charge. Sec-tion 2 of the Amusement Tax Act, in defining established price, provides that in cases of "amusement conducted at any roof garden, night club, cabaret, or other place where the charge for admission is wholly, or in part, included in the price paid for refreshment, service, or merchandise, the amount paid for admission to such amusement shall be deemed to be twenty (20) per centum of the amount paid for refreshment, service, and merchandise." In the Yanko case, when the restaurant provided an orchestra and a place for dancing for its patrons, it was held to be furnishing amusement to the public under the provision of the act.

But in the present case there is not shown to have been a place for dancing or an opportunity for dancing pro-vided. Boiled down to its essence the contention of the Commonwealth is that when music is furnished at an eating place, that place is the equivalent of a night club, roof garden, etc. We do not so hold. In our opinion the mere furnishing by the proprietor of some kind of music during the meal hours of his patrons does not make that restaurant a place taxable. No such conclusion arises from a reasonable construction of all the provisions of the act.

In conclusion, our verdict for defendant is based upon our general conclusion that the situation of defendant,

lessor of these mechanical victrolas, was not such a one as the legislature intended to tax. If a tax is payable for amusement provided at this Paramount Inn, certainly the operators of the Paramount Inn are liable for the tax and not this defendant. Therefore defendant has been found not guilty and the costs placed upon the county. No witness fees are allowed because the sole witness for the Commonwealth was an agent of the Department of Revenue.

From William McElwee, Jr., New Castle.